Kevin E. O'Malley (006420)
Hannah H. Porter (029842)
Gallagher & Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone: 602.530.8000
Facsimile: 602.530.8500
Email: kevin.omalley@gknet.com
Email: hannah.porter@gknet.com

Steven M. Gombos (pending *pro hac vice*)
Virginia State Bar No. 30788
David Obuchowicz (pending *pro hac vice*)
Virginia State Bar No. 82483
Gombos Leyton, PC
11350 Random Hills Road #400
Fairfax, Virginia 22030
Telephone: 703.934.2660
Facsimile: 703.934.9840
Email: sgombos@glpclaw.com
Email: dobuchowicz@glpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University, | No. |
| Plaintiff, | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| Miguel Cardona, in his Official Capacity as Secretary of the United States Department of Education, and the United States Department of Education, | **Injunctive Relief Requested** |
| Defendants. | |

Grand Canyon University ("GCU"), by counsel, alleges the following factual

allegations against Miguel Cardona, in his official capacity as Secretary of the United

States Department of Education ("Secretary") and the United States Department of

Education ("Department") (collectively "Defendants") as follows:

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

**INTRODUCTION**

1.  In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub.L. No. 116-136, 134 Stat. 281 (2020), to respond to the devastating impacts of the COVID-19 pandemic.  As part of the CARES Act, Congress appropriated $30.75 billion to the Department of which the Secretary was required to allocate a portion for the creation of the Higher Education Relief Fund ("HEERF I").  Subsequently, Congress enacted the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSAA"), Public Law 116-260 (2020).  The CRRSAA allocated $21.2 billion to the Higher Education Emergency Relief Fund II ("HEERF II"), and then, in early March 2021, Congress passed the American Rescue Plan Act of 2021 ("ARPA"), Pub.L. 117-2, which allocated an additional $40 Billion to the Higher Education Emergency Relief Fund III ("HEERF III").[1]

2.  In the CRRSAA and APRA, Congress ordered the Department to allocate substantially more HEERF II and HEERF III funds to nonprofit and public institutions of higher education (IHEs) than to proprietary IHEs.

3.  Congress directed the Department to allocate the HEERF funds to eligible IHEs to defray expenses associated with coronavirus and to provide financial grants to students.  The CRRSAA and APRA distinguished between proprietary IHE's and nonprofit and public IHEs.  Those laws allocated far greater percentages of the HEERF funds to

---

[1] Hereinafter, the term "HEERF," when referenced without a roman numeral modifier, shall include HEERF I, HEERF II, and HEERF III, collectively.

nonprofit and public IHEs. They also placed limitations on how proprietary IHEs could use those funds.

4.   The Department has consistently held that the HEERF is a direct grant program, subject to its regulations regarding direct grant eligibility.  Those regulations are clear:  a grant applicant that is recognized by the Internal Revenue Service ("IRS") as a 501(c)(3) organization under the Internal Revenue Code is a nonprofit for grant purposes.  The Department does not have any discretion to deny nonprofit status to grant applicants meeting this requirement.

5.   GCU is recognized by the IRS as a 501(c)(3) organization.

6.   Nonetheless, the Department refuses to classify GCU as a nonprofit IHE for HEERF purposes notwithstanding its unambiguous regulations.

7.   By classifying GCU as a proprietary IHE for HEERF purposes, the Department acted contrary to its own regulations and exceeded its authority to administer grant programs.

8.   Because of the Department's unlawful actions, GCU and its students are being deprived of millions of dollars in emergency funding when they are needed most.  Once the Department allocates HEERF funds to other IHEs, those funds will be gone forever. Absent immediate injunctive relief from this Court, GCU and its students will be irreparable harmed and without a remedy.

**PARTIES**

9.   GCU is a private, nonprofit Christian university located in Phoenix, Arizona.  It currently educates over 100,000 students, with approximately 23,000 of those students attending its ground campus in Phoenix, Arizona.  For its first 55 years, GCU operated as an Arizona nonprofit institution. Facing financial pressures in the early 2000s, GCU's Board of Trustees approved GCU's sale to a proprietary company to raise money to keep the University operating. In 2018, after returning to solid financial footing, GCU sought to return to its nonprofit status, which would allow GCU and its students, faculty and staff to participate in academic, co-curricular, and athletic opportunities with peer institutions, and provide grant writing and research opportunities for faculty and students.

10.   GCU's primary purpose in returning to its nonprofit status was to ensure faculty and students would receive the same benefits and treatment as other public and private nonprofit universities.

11.   To accomplish its return back to nonprofit status, GCU's Board of Trustees formed a new entity, "Gazelle." Gazelle purchased GCU from its prior proprietary owner. Before the transaction, Gazelle applied for and received IRS approval as a 501(c)(3) tax-exempt nonprofit organization. And after Gazelle completed the acquisition, the IRS issued a letter reaffirming Gazelle's 501(c)(3) status. After acquiring the assets of the university, Gazelle changed its name to Grand Canyon University. The university is currently owned and operated by Plaintiff GCU (formerly, Gazelle), a tax-exempt 501(c)(3) organization.

12. Mr. Miguel Cardona is the Secretary of the Department. He is being sued in his official capacity in which he has overall responsibility for the operation and management of the Department. As Secretary, Mr. Cardona is responsible for the Department's acts and omissions alleged in the complaint even if he was not personally involved. His official address is 400 Maryland Avenue, S.W., Washington, D.C. 20202.

13. The Department of Education is an executive agency of the United States Government.  It was created by the Department of Education Organization Act of 1979, 20 U.S.C. § 3401 et seq., Pub. L. No. 96-88, 93 Stat. 668. The Department is headquartered at 400 Maryland Avenue, S.W., Washington, D.C. 20202.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

15. This Court has personal jurisdiction over the Department as an executive agency of the United States of America.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

**Congress creates and funds new emergency direct grant programs, allocating the substantial majority of the funding directed to nonprofit IHEs.**

17. Congress enacted the CARES Act in March 2020 to provide emergency assistance for individuals, families, and businesses affected by the COVID-19 pandemic.

The CARES Act appropriated more than $14 billion to the Department to establish the HEERF I. CARES Act §§ 18001(b)(3), 18004(a)(1).  The bulk of the HEERF I funding (90%) was earmarked for grants to institutions of higher education ("IHEs").  *Id.* § 18004(a)(1).

18.   Congress established the HEERF in order to provide IHEs with resources to "prevent, prepare for, and respond to coronavirus."  CARES Act, 134 Stat. 564. The HEERF accomplishes this by using the Department as a conduit to distribute funding in the form of direct grants to institutions of higher education.  *Id.* § 18004(a).

19.   Congress directed the Department to allocate those funds to IHEs based on a specified formula.  *Id.* §§18001, 18004(a)(1).  Under the CARES Act, IHEs must use 50 percent of the funds to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus.  *Id.* § 18004(c).  The remaining 50 percent can be used for any costs related to changes to delivery of instruction due to the coronavirus.  *Id.*

20.   The CARES Act did not distinguish between nonprofit and proprietary IHEs. However, in GCU's initial application for HEERF I funds, it indicated that it was a nonprofit with IRS 501(c)(3) status. **Ex. 1** at 2 (Application for Federal Assistance SF-224).

21.   In December 2020, Congress enacted the CRRSAA. The CRRSAA created and appropriated another roughly $22.9 billion to the HEERF II.  CRRSAA § 311(b)(3). Again, most of this funding was allocated to institutions of higher education.  *Id.* §§

6

314(a)(1), 314(a)(4).   Departing from the process Congress created in the CARES Act, which did not distinguish based on tax status, the CRRSAA earmarked 89% of HEERF II grants to public and private nonprofit institutions of higher education.  *Id.* § 314(a)(1). Only 3% of HEERF II grants is earmarked to proprietary institutions of higher education. *Id.* § 314(a)(4).

22.   When the Department published its solicitation for HEERF I (CARES Act) allocations, it also published allocation tables showing each IHE's HEERF I award amounts. **Exs. 2 and 3** (Allocation Tables for 18004(a)(1) Grants).[2]  The CARES Act did not differentiate between nonprofit and proprietary IHEs for the HEERF I, so the allocation table does not identify whether each IHE is public/nonprofit or proprietary.

23.   But when the Department published the allocation tables for the HEERF II, GCU was incorrectly classified as a proprietary IHE and was allocated HEERF II grants on that basis. **Ex. 4** (Allocation Table for Section 314(a)(4) Proprietary Grants).[3]

24.   Then, in early March 2021, Congress passed the ARPA, which created and allocated an additional $39.5 billion to the HEERF III.  ARPA § 2003.  The ARPA required the Department to allocate HEERF III in accordance with the same terms and

---

[2] The Department's Allocation Table for the CARES Act 18004(a)(1) student grant portion can be found on the Department's website here: https://www2.ed.gov/about/offices/list/ope/allocationsforsection18004a1ofcaresact.pdf The Department's Allocation Table for the CARES Act 18004(a)(1) institutional grant portion can be found on the Department's website here: https://www2.ed.gov/about/offices/list/ope/allocationstableinstitutionalportion.pdf
[3] The Department's Allocation Table for the CRRSAA 314(a)(4) allocations can be found on the Department's website here: https://www2.ed.gov/about/offices/list/ope/314a4allocationtableheerfii.pdf

conditions as the CRRSAA, with limited exceptions.  ARPA § 2003 (incorporating by reference § 314(a) of the CRRSAA).

25.   Although the ARPA allocated roughly twice as much funding as the CRRSAA, Congress substantially cut the funding available to proprietary IHEs: it allocated only 1% of HEERF III funds to proprietary IHEs, while allocating 91% to nonprofit and public IHEs.  ARPA §§ 2003(1)-(4).

26.   The Department has not yet announced school-by-school allocations of the HEERF III, but it clearly indicated that it considers GCU a proprietary institution for those purposes.

27.   Notwithstanding the substantial differences in the amount of funding available to nonprofit and proprietary IHEs, respectively, both the CRRSAA and the ARPA use the same formula to calculate each IHE's allocated share of each pool.  CRRSAA §§ 314(a)(1-4); ARPA §§ 2003(1)-(4).

28.   Ninety-eight percent of the funding is to be distributed based on each IHE's relative enrollment of non-online students.  *Id.* There are four elements to that distribution:

      a.   37.5% of the funding is allocated based on enrolled full-time Pell Grant recipients;

      b.   37.5% of the funding is allocated based on enrolled full-year (headcount) Pell Grants recipients;

     c.  11.5% is allocated based on enrolled full-time students who were not Pell Grant recipients; and

     d.  11.5% is allocated based on enrolled full-year (headcount) students who were not Pell Grant recipients.

*Id.*

29.  The remaining 2% is allocated based on the number students exclusively enrolled in distance education classes:  1% based on enrolled Pell Grant recipients and 1% based on enrolled students who were not Pell Grant recipients.  *Id.*

30.  Although the same formula applies to nonprofit and proprietary IHEs, allocations are made from two drastically different pools of money. The ARPA allocates approximately $36 billion to nearly 3,500 public and private nonprofit IHEs (*see* **Ex. 5**, Allocation Table for Section 314(a)(4) Proprietary Grants),[4] but only about $395.8 million to approximately 1,630 for-profit IHEs (*see* **Ex. 4**).[5]  ARPA § 2003.

31.  In short, even though there are only twice as many nonprofit and public IHEs as proprietary IHEs, the nonprofit and public IHEs receive 91 times more funding.

32.  This disparity results in substantial funding differences. By way of comparison, Liberty University, a private nonprofit IHE, received $37,777,577 in HEERF II allocations. **Ex. 5** at 76.  According to the Department's National Center for Education

---

[4] According to the Department's 314(a)(1) Allocation Table (Ex. 5), there are 3,499 public and nonprofit IHEs eligible to claim HEERF II funds.
[5] According to the Department's CRRSAA 314(a)(4) Allocation Table (Ex. 4), there are 1,646 proprietary IHEs eligible to claim HEERF II funds.

Statistics ("NCES"), Liberty enrolls 47,025 undergraduate students, 72% of whom are enrolled only in distance education.  About 19,943 of Liberty's undergraduates receive Pell grants.[6]

33.   GCU has a similar student profile to Liberty's. GCU's total undergraduate enrollment is 58,997 students, 68% of whom are enrolled only in distance education. About 24,607 of GCU's undergraduates receive Pell Grants.[7]

34.   GCU, however, only received $18,004,836 in HEERF II allocations, about half the amount allocated to Liberty.  **Ex. 4** at 1.

35.   While the Department has not yet announced the school-by-school allocations for HEERF III funds, the American Council on Education ("ACE") estimates that the disparity between the two schools will be even more severe:  Liberty is estimated to receive $66,300,000 in allocations, while GCU is estimated to receive only $11,030,000.[8]

36.   Not only do the CRRSAA and ARPA allocate substantially less emergency funding to proprietary IHEs, they are more restrictive as to how they IHEs can spend HEERF II and III funds.

---

[6] NCES's data regarding Liberty can be found on the NCES College Navigator website here:  https://nces.ed.gov/collegenavigator/?q=liberty&s=all&id=232557
[7] NCES's data regarding GCU can be found on the NCES College Navigator website here:
https://nces.ed.gov/collegenavigator/?q=grand+canyon+university&s=all&id=104717
[8] ACE's American Rescue Plan simulated HEERF allocations can be found here:
https://www.acenet.edu/Policy-Advocacy/Pages/HEA-ED/ARP-Higher-Education-Relief-Fund.aspx

37.   Nonprofit and public IHEs must use at least 50% on financial aid grants to students.  CRRSAA § 314(d)(5).  The remaining funds can be used for other purposes, including defraying and reimbursing costs (including lost revenue and payroll) associated with coronavirus.  CRRSAA §§ 314(c)(1)-(3).

38.   Proprietary IHEs, on the other hand, must pass all HEERF II and III funds directly to students through financial grants.  *Id.* § 314(c)(7).  Proprietary IHEs cannot even recover the administrative costs of processing and distributing the funds to students.  **Ex. 6** at 5 (*HEERF II Proprietary Institution Grant Funds for Students Frequently Asked Questions*, Published Jan. 14, 2021).[9]

> **IRS recognition as 501(c)(3) organization is determinative of nonprofit status under the Department's direct grant regulations.**

39.   The Department administers the HEERF as a direct grant program.  Institutions must apply for HEERF funds through www.grants.gov and must manage their grants in accordance with the Uniform Grant Guidance (2 CFR Part 200), except where modified by the Department.  Moreover, the Department assigned a Catalog of Federal Domestic Assistance Numbers ("CFDA") to HEERF solicitations and Funding Opportunity Numbers for each iteration of HEERF funding.  *See, e.g.,* 86 FR 4029, 4030 ("Applicants are required to submit their applications using Grants.gov. The Grants.gov Funding Opportunity Numbers are ED–GRANTS–041020–003 for the Student Aid Portion and

---

[9] Available from the Department's website here:
https://www2.ed.gov/about/offices/list/ope/faqsfora4crrsaaheerfii.pdf.

ED–GRANTS–042120– 004 for the Institutional Portion").  These are practices the Department follows for its direct grant programs.

40.   The Department has published regulations that determine nonprofit status in the context of its direct grant programs.  Those regulations are clear:  a grant applicant that is recognized by the IRS as a 501(c)(3) organization under the Internal Revenue Code is a nonprofit institution for grant purposes.

41.   Under 34 C.F.R. § 75.51, when an institution "must show that it is a nonprofit organization," it may do so by furnishing the Department with "proof that the IRS currently recognizes the applicant as an organization to which contributions are tax deductible under section 501(c)(3) of the Internal Revenue Code."

42.   Such proof is conclusive on the matter.  Indeed, the regulation leaves the Department no discretion to deny nonprofit status to a grant applicant who meets this requirement.

**The Department refuses to recognize GCU as a nonprofit IHE notwithstanding  recognition from the IRS as a 501(c)(3) organization.**

43.   In a letter dated March 17, 2021, counsel for GCU notified the Department that GCU, a duly recognized 501(c)(3) IHE, was improperly classified as a proprietary institution for HEERF purposes.  The letter requested reclassification of GCU as a nonprofit IHE and sought allocations of HEERF II and HEERF III funds on that basis.  **Ex. 7** (March 17, 2021 Letter from GCU to the Department).

44.   GCU explained that it meets the eligibility requirements of a nonprofit IHE for direct grant purposes under 34 C.F.R. § 75.51 and provided proof of the IRS's 501(c)(3)

12

recognition. *Id.*

45.   The Department responded on March 26, 2021.  It conceded that the HEERF is a direct grant program, but nonetheless claims that 34 C.F.R. § 75.51 does not apply to GCU.  **Ex. 8** at 3 (March 26, 2021 Letter from the Department to GCU).

46.   Instead, the Department contends it must apply its regulations at 34 C.F.R. part 600, which describe eligibility requirements for participation in Title IV, HEA programs ("Title IV programs").  *Id.*

47.   But part 600 is only applicable to whether an IHE is an "eligible institution" for purposes of student assistance programs authorized by the HEA.  *See* 34 C.F.R. § 600.1.  That part establishes **additional** eligibility requirements an IHE must meet to participate in Title IV programs.  It does not apply to direct grant eligibility.

48.   The Department previously refused to recognize GCU's nonprofit status for Title IV purposes.  Following the July 2018 transaction (*see* ¶¶ 9-11, above), GCU sought approval to continue participation in Title IV programs pursuant to the Department's change-in-ownership requirements at 34 C.F.R. § 600.30.  In November 2019, the Department approved GCU's application to continue participating in HEA, Title IV programs but refused to recognize GCU's nonprofit status for that purpose.

49.  After GCU spent over a year trying to work with the Department to avoid litigation and providing additional information and independent studies further confirming GCU's compliance with all nonprofit requirements, the Department affirmed its decision in a January 12, 2021 letter.

50.  Importantly, however, the Department expressly limited its decision to "purposes of [GCU's] participation in the Title IV, HEA programs" and clarified that "[t]he Department does not take a position with respect to [GCU's] non-profit 501(c)(3) status with the Internal Revenue Service."

51.  Thus, the Department's decision, by its own terms, is inapplicable to direct grant programs such as HEERF, which are not Title IV funds.

52.  To be clear, the Department's refusal to recognize GCU as a nonprofit IHE for Title IV purposes is also arbitrary and capricious and contrary to the law.

53.  The Department concedes that HEERF is a direct grant program, authorized by the CARES Act, CRRSAA, and ARPA.

54.  HEERF is not a student assistance program authorized by Title IV of the HEA.

55.  When Congress created the three HEERF funds, it said nothing about rewriting the Department's grant eligibility requirements. It simply created a new direct program without announcing any changes in how the Department administers those programs.

56.  GCU's eligibility as a nonprofit IHE for HEERF purposes is governed by the Department's direct grant eligibility regulations and not regulations governing eligibility for Title IV purposes.  It is not governed by regulations applicable only to participation in HEA authorized student assistance programs.

**GCU is a Nonprofit for HEERF Purposes**

57.   The CRRSAA and APRA refer to nonprofit and proprietary IHEs as they are

defined in Sections 101(a) and 102(b) of the Higher Education Act ("HEA"), respectively.

CRRSA § 314(a).

58.   Section 101(a) of the HEA defines "Institution of Higher Education" as "an

educational institution in any State that [among other things] is a public or nonprofit

institution." 20 U.S.C. § 1001(a)(4). It does not define "nonprofit institution."

59.   As it is used in 20 U.S.C. § 1001(a)(4), the term "nonprofit" is defined by the

Department of Education in its Education Department General Administrative

Regulations ("EDGAR") at 34 C.F.R. parts 75, 77, 79, 81, 82, 84, 86, 97, 98, and 99.

60.   The EDGAR definitions apply to all federally funded programs the Department

administers.  The Department expressly held that EDGAR governs its oversight and

administration of HEERF funds.  *See* 86 FR 4029, 4030 (Department's Notice of

Availability of HEERF grant funding under 314(a)(1)) (Listing EDGAR as "Applicable

Regulations"); *see also* 34 C.F.R. 77.1(b) ("Definitions that apply to all Department

Programs.").

61.   In its public guidance addressing the HEERF funds, the Department has

acknowledged that funds awarded under HEERF are grants subject to the Office of

Management and Budget's Uniform Guidance for federal grants (2 CFR part 200).

**Exhibit 9** at pgs. 5-6 (*HEERF Frequently Asked Questions (FAQ) Rollup Document*, last

updated November 20, 2020); *see also* **Exhibit 10** (*Department Guidance Letter re:*

*HEERF auditing requirements*, March 8, 2021) (referring to HEERF as "grant program" and requiring IHEs to comply with 2 C.F.R. part 200 audit requirements).

62.   And the OMB's binding guidance also identifies EDGAR's provisions as the requirements governing the Department's allocation of HEERF funds. **Exhibit 11** at pg. 68 (*OMB 2 CFR part 200, Appendix XI, Compliance Supplement Addendum*, Dec. 2020).

63.   In other words, the Department must administer HEERF funds in accordance with its EDGAR provisions.

64.   Under EDGAR, a "nonprofit" is any IHE that is "owned and operated by one or more corporations or associations whose net earnings do not benefit, and cannot lawfully benefit, any private shareholder or entity."  34 C.F.R. 77.1(c).

65.   The Department's EDGAR provisions also expressly state how an IHE can prove that it is a nonprofit under § 77.1(c) for purposes of establishing eligibility for direct grants such as HEERF funds. *See* 34 C.F.R. § 75.51 ("How to prove nonprofit status").

66.   Under 34 CFR § 75.51(b), an applicant conclusively establishes its nonprofit status by providing proof that it is recognized by the IRS as a 501(c)(3) tax exempt organization.

67.   In short, an applicant for a direct grant program, such as HEERF, is a nonprofit if it is recognized by the IRS as a 501(c)(3) organization. IRS 501(c)(3)-recognition is conclusive proof of nonprofit status. Under its own rules, the Department has no residual authority to determine non profit status for direct grant programs.

68. GCU provided the Department proof that the IRS recognizes its 501(c)(3) status

16

on multiple occasions—first in an August 2018 change in ownership application and

again, more recently, in a March 17, 2021 letter.

69.   Because GCU established its nonprofit status under the applicable EDGAR

provisions, the Department's decision to treat GCU as a proprietary institution for

purposes of the HEERF funds is contrary to law and arbitrary and capricious.

### The University Faces Irreparable Harm

70.   The HEERF funds Congress allocated are fixed sums that GCU and other IHEs

are entitled to receive to cover expenses related to the disruption of campus operations due

to coronavirus.

71.   Under HEERF II, only 3% of the available funds are allocated to proprietary

institutions, compared with 89% to public and nonprofit institutions.  For the HEERF III,

only 1% is allocated to proprietary institutions, compared with 91% to public and

nonprofit institutions.

72.   HEERF II and HEERF III use the same formula to allocate funds to institutions in

the public and private nonprofit pool and in the for-profit pool. Based on its student

population, GCU's proportionate share of HEERF funds was significantly reduced when

the Department improperly classified it as a proprietary IHE.

73.   As alleged above, proprietary IHEs receive substantially less in HEERF II and

HEERF III grants than similarly situated nonprofit and public IHEs.

74.   As more nonprofit IHEs claim HEERF II and HEERF III funds, the funds

available for GCU will be reduced.  And, once disbursed, those funds will be gone. They

will not be recoverable by judicial decree. *See City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1424, 306 U.S. App. D.C. 313 (D.C. Cir. 1994) ("It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation."); *Ambach v. Bell*, 686 F.2d 974, 986, 222 U.S. App. D.C. 348 (D.C. Cir. 1982) (holding that "interim relief" was proper in a case in which plaintiff States challenged the agency's formula for distributing educating funding, because, "[o]nce the . . . funds are distributed to the States and obligated, they cannot be recouped").

75.  In short, GCU will no longer be able to claim the allocated funds once they are disbursed.

76.  Institutions are encouraged to expend HEERF funds quickly to ameliorate the current national emergency. Absent relief, HEERF II and HEERF III funds will be quickly depleted, depriving GCU and its students of needed economic relief.

77.  Congress directed the Department to allocate HEERF II and HEERF III funds within 30 days of enactment of the CRRSAA and ARPA, respectively.  CRRSAA § 314(b)(2)(A); ARPA § 2003 (incorporating by reference § 314 of the CRRSAA).  The ARPA was enacted March 11, 2021, which means that the Department must act imminently to allocate HEERF III funds.

78.  Any funds not claimed within 90 days of the Department's invitation to apply for HEERF II and HEERF III funds, respectively, are reallocated to those IHEs that previously applied.  The Department's invitation to apply for HEERF II funds was issued

18

on January 15, 2021.  *See* 86 FR 4029.  According to the Department, the deadline to

apply for HEERF II funds is April 15, 2021.

79.   After that date, any remaining HEERF II funds available for nonprofit and public

IHEs must be allocated to other schools.  Once that occurs, GCU will no longer be able to

claim those funds.

## CAUSES OF ACTION

### Count I - Declaratory Judgment Action.

80.   Paragraphs 1 through 79 are incorporated by reference as if set forth in full herein.

81.   GCU is a nonprofit institution under the Department's grant regulations.

82.   As a matter of law, GCU's recognition by the IRS as an approved 501(c)(3)

organization is determinative of GCU's status as a non-profit IHE under the Department's

grant eligibility requirements.

83.   The Department acted contrary to law and arbitrarily and capriciously in

classifying GCU as a proprietary IHE for HEERF purposes.

84.   This action raises a justiciable and actual controversy with respect to whether

GCU is a nonprofit IHE for HEERF purposes.

85.   The Department's improper classification of GCU as a proprietary IHE for

HEERF purposes denies GCU HEERF funds to which it is entitled and harms GCU and

its students.

86.   A declaratory judgment resolving these issues will (i) prevent future harm to GCU

by allowing it to receive the full amount of HEERF funds to which it is entitled; (ii) settle

the legal rights of the GCU and the Department in this action; and (iii) resolve the controversy that culminated in this action.

87.   GCU will suffer immediate and irreparable harm if the Department's improper classification of GCU as a proprietary IHE is permitted to stand.  The funds allocated to nonprofit IHEs are limited. Once they are allocated, GCU will be unable to claim them.

88.   Absent equitable relief, GCU has no adequate remedy at law and will suffer irreparable harm.

### Count II – Administrative Procedures Act

89.   Paragraphs 1 through 88 are incorporated by reference as if set forth in full herein.

90.   The Administrative Procedures Act ("APA") prohibits agency action that is contrary to law or arbitrary and capricious.

91.   The Department's improper classification of GCU as a proprietary IHE for HEERF purposes must be vacated and set aside pursuant to 5 U.S.C. § 706 because that classification is contrary to the law; in excess of statutory authority and limitations and short of statutory right; and arbitrary and capricious,

92.   The Department's classification of GCU as a proprietary IHE is contrary to the law because GCU is an IRS recognized 501(c)(3) organization.

93.   Moreover, in classifying GCU as a proprietary IHE for HEERF purposes, the Department exceeded its statutory and regulatory authority because the CRRSA and APRA do not provide any basis for the Department to depart from its own grant eligibility requirements. Those requirements are clear.  When applying for a grant, an IHE is a

nonprofit if it is so recognized by the IRS.  GCU meets that requirement.  Thus, GCU has a statutory right to receive the HEERF funds to which it is entitled as a nonprofit IHE.

94.   The Department also acted arbitrarily and capriciously by classifying GCU as a proprietary IHE for HEERF purposes.  An agency acts in an arbitrary and capricious manner when it departs from controlling law; when it considers factors that Congress or the agency's regulations did not intend it to consider; and when it fails to consider an important aspect of the issue before it.

a.      The Department departed from controlling law when it ignored its long-standing grant eligibility requirements by classifying GCU as a proprietary IHE even though GCU is approved by the IRS as a 501(c)(3) organization.

b.      The Department failed to provide a reasonable explanation for its departure from controlling regulatory requirements.

c.      The Department considered factors that Congress and the Department's own regulations did not intend it to consider by looking beyond the IRS's recognition of GCU as a 501(c)(3) organization, which is determinative for HEERF purposes.

d.      The Department also failed to consider an important aspect of the issue by ignoring GCU's IRS approved 501(c)(3) status, which is determinative for HEERF purposes.

e.      GCU is therefore entitled to an order and judgment from this Court declaring that the Department's failure to recognize GCU as a nonprofit for HEERF purposes violated the law, exceeded the Department's statutory and regulatory authority,

and was arbitrary and capricious within the meaning of 5 U.S.C. § 706, and ordering the Department to recognize GCU as a nonprofit IHE for HEERF purposes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)     That the Court enter a declaration that the GCU is a nonprofit IHE for purposes of HEERF II and HEERF III allocations and that the Department's classification of GCU as a proprietary IHE for HEERF purposes is contrary to the law; in excess of statutory and regulatory authority and limitations and short of statutory right; and arbitrary and capricious.

(B)     That the Court enter a temporary restraining order and preliminary injunction ordering the Department to immediately recognize GCU as a nonprofit for HEERF purposes.

(C)     That the Court enter a temporary restraining order and preliminary injunction ordering the Department to allocate and disburse HEERF II and HEERF III funds to GCU pursuant to its nonprofit status, or, alternatively, ordering the Department to preserve GCU's rights to receive all emergency funds to which it is entitled as a nonprofit IHE under the CRRSAA and ARPA until the matters raised in GCU's Complaint are adjudicated.

(D)     That the Court enter a permanent injunction ordering the Department to recognize GCU as a nonprofit for HEERF II and HEERF III purposes.

1    (E)    That the Court enter an order retaining jurisdiction over this matter to

2 enforce the foregoing injunctive relief; and

3
     (F)    That the Court award such other relief as may seem just and proper.
4

5            Dated this April 1, 2021.

6                                              Respectfully submitted,

7
                                               /s/ Hannah H. Porter
8                                              Kevin E. O'Malley
                                               Hannah H. Porter
9                                              GALLAGHER & KENNEDY
                                               2575 E. Camelback Road, Suite 1100
10                                             Phoenix, Arizona 85016

11                                              /s/ Steven M. Gombos
                                               Steven M. Gombos
12                                             GOMBOS LEYTON, P.C.
                                               11350 Random Hills Road, Suite 400
13                                             *Lead Attorney for Plaintiff*

14
   I certify that on this 1st day of April, 2021, I electronically transmitted the foregoing
15 Complaint to the Clerk of Court.

16

17 */s/ Andrea L. Parker*
   8495569
18

19

20

21

22

23

24

25

26

                                      23

1

**<u>VERIFICATION</u>**

2

I, Brian Mueller, a citizen of the United States and a resident of the State of Arizona, have

3

read the forgoing Verified Complaint for Declaratory and Injunctive Relief, and declare

4

under the penalty of perjury, pursuant to 28 U.S.C. § 1746 that the forgoing is true and

5

correct to the best of my knowledge and belief.

6

7

Executed this 1st day of April, 2021

8

9

10                                          /s/Brian Roberts_____
                                            Brian Roberts
11                                          General Counsel for GCU

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26