Exhibit 6

OPE-HEP-01142021-02

# Higher Education Emergency Relief Fund (HEERF) II
# Proprietary Institution Grant Funds for Students (CFDA 84.425Q) ((a)(4) Program) Frequently Asked Questions[1]

### Coronavirus Response and Relief Supplemental Appropriations Act, 2021

Published January 14, 2021

On December 27, 2020, the President signed the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 (CRRSAA) (P.L. 116-260). This new law gives the U.S. Department of Education (Department) approximately $22.7 billion to distribute to institutions of higher education in order to prevent, prepare for, and respond to coronavirus through the HEERF.

This law has some similarities—as well as important differences—from the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (P.L. 116–136) that was enacted on March 27, 2020. These FAQs provide an overview of those similarities and differences and describe the differences between the funds allocated under section 314(a)(4) of the CRRSAA. The grant program authorized under section 314(a)(4) of the CRRSAA is referred to below as the "(a)(4) program" and its funds as "(a)(4) funds."

## CRRSAA (a)(4) Program

1. **Question:** Will proprietary institutions receive funds under the CRRSAA? How do they apply?

   **Answer:** Yes, but proprietary institutions are not eligible for supplemental funding under the CRRSAA (a)(1) programs; rather, such institutions must apply for awards under a new section 314(a)(4) program. This program provides a separate funding stream for proprietary institutions that may be used only for financial aid grants to students. The amount each proprietary institution is eligible to receive is based on the formula described in section 314(a)(1) of the CRRSAA and listed on an allocation table (the "(a)(4) allocation table").

   Each completed application for a section 314(a)(4) program grant must consist of:

   1) **A completed SF-424 and SF-424 supplemental form;**
   2) **A Certification and Agreement** (Proprietary Institution Grant Funds for Students) (Red C&A)

   The Grants.gov Funding Opportunity Number is ED-GRANTS-011521-005 for this program, Proprietary Institution Grant Funds for Students (CFDA 84.425Q). Applications must be submitted by April 15, 2021. To register to use Grants.gov, please visit their

---

[1] Other than statutory and regulatory requirements included in the document, the contents of this guidance do not have the force and effect of law and are not meant to bind the public. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.

EXHIBIT 6 - 1

"How to Apply for Grants" webpage here, or call their Applicant Support helpdesk at 1-800-518-4726. More information about how to apply is available on our HEERF II CRRSAA website.

2. **Question:** My proprietary institution is listed on the CRRSAA (a)(4) program allocation table but did not receive funding under the CARES Act. Can we receive funds under the CRRSAA?

   **Answer:** Yes. Your proprietary institution may apply for funds under the CRRSAA (a)(4) program for proprietary institutions even if it did not receive funding under the CARES Act.

3. **Question:** What amount of (a)(4) funds must institutions devote to financial aid grants to students?

   **Answer:** The CRRSAA requires that proprietary institutions receiving funding under the (a)(4) program to use all their grant funds to provide financial aid grants to students.

4. **Question:** What are the requirements for making financial aid grants to students?

   **Answer:** Unlike the CARES Act, the CRRSAA requires that institutions prioritize students with *exceptional need*, such as students who receive Pell Grants, in awarding financial aid grants to students. However, students do not need to be only Pell recipients or students who are eligible for Pell grants. In addition, the CRRSAA explicitly provides that financial aid grants to students may be provided to students exclusively enrolled in distance education.

   Institutions may not (1) condition the receipt of financial aid grants to students on continued or future enrollment in the institution, (2) use the financial aid grants to satisfy a student's outstanding account balance, unless it has obtained the student's written (or electronic), affirmative consent, or (3) require such consent as a condition of receipt of or eligibility for the financial aid grant.[2]

   Institutions should carefully document how they prioritize students with exceptional need in distributing financial aid grants to students, as the Department intends to establish reporting requirements regarding the distribution of financial aid grants to students consistent with section 314(e) of CRRSAA.

---

[2] The Department's guidance for emergency financial aid grants under section 18004(a)(1) of the CARES Act did not advise institutions to use such grants to satisfy a student's outstanding account balance. However, upon further consideration, the Department believes that allowing students to consent to the application of a CRRSAA financial aid grant to their student accounts would facilitate such a use of funds, if desired by the student, while retaining the student's discretion to determine what costs should be covered with his or her financial aid grant funds.

**EXHIBIT 6 - 2**

5. **Question:** How may students use their financial aid grants?

   **Answer:** Financial aid grants for students may be used for any component of the student's cost of attendance or for emergency costs that arise due to coronavirus, such as tuition, food, housing, health care (including mental health care) or child care.

   See Question 19 of the [Higher Education Emergency Relief Fund (HEERF) Frequently Asked Questions (FAQ) Rollup Document](#) for more details as to how institutions may pay the financial aid grants to students, if not applying it to a student's account after obtaining the student's written (or electronic), affirmative consent.

6. **Question:** How long does a proprietary institution have to apply for the (a)(4) program?

   **Answer:** CRRSAA section 314(f) requires that proprietary institutions apply for funding within 90 days of the publication of the Notice Inviting Applications, which is April 15, 2021.

## CARES Act (a)(1) Program

7. **Question:** My proprietary institution received a CARES Act section 18004(a)(1) Student Aid Portion (CFDA 84.425E) and/or Institution Portion (CFDA 84.425F) grant. How has the use of funds changed for any of these unspent CARES Act grant funds?

   **Answer:** The expanded use of funds authority under the CRRSAA also applies to any unspent CARES Act (a)(1) program funds. Institutions may use those unexpended funds for the following:

   - Defraying expenses associated with coronavirus (including lost revenue, reimbursement for expenses already incurred, technology costs associated with a transition to distance education, faculty and staff trainings, and payroll);
   - Carrying out student support activities authorized by the Higher Education Act of 1965, as amended (HEA) that address needs related to coronavirus; and
   - Making financial aid grants to students in the same way they are allowed to use their Proprietary Institution Grant Funds for Students, including by providing such grants to students exclusively enrolled in distance education (as described in Question 4).

   Institutions have this expanded flexibility to use unliquidated (unspent) funds effective December 27, 2020 (the date of enactment of the CRRSAA).

   Please note that under section 314(d)(5), an institution that utilizes the expanded use of funds authority under the CRRSAA for its unspent CARES Act funds must ensure at least 50% of the funds it received under CARES Act section 18004(a)(1) (generally, its Student Aid Portion award) is used for financial aid grants to students.

**EXHIBIT 6 - 3**

8. **Question:** What "student support activities" may be supported by the expanded uses of funds for my unspent Institutional Portion CARES Act funds?

   **Answer:** Section 314(c)(2) allows a proprietary institution to use unexpended Institutional Portion CARES Act funds (CFDA 84.425F) on student support activities authorized by the HEA, where those student support activities address needs related to the coronavirus. The Department interprets this provision to, among other authorized activities, authorize grantees to use CRRSAA funds to carry out TRIO and Gaining Early Awareness and Readiness for Undergraduate Programs (GEAR UP) program activities to the extent that those activities address needs related to the coronavirus.

   For example, (a)(1) institutional funds may be used to support the transition to virtual activities, purchase PPE, or support other innovative learning methods that would allow an institution to engage in student support activities authorized under the HEA during the COVID-19 pandemic.

9. **Question:** My proprietary institution received a CARES Act HEERF grant. Will my institution be able to receive a grant under the (a)(4) program if we have not yet complied with the quarterly or annual reporting requirements for the HEERF grant program?

   **Answer:** Proprietary institutions that have not yet complied with the reporting requirements of the CARES Act may receive (a)(4) awards with a restriction on the ability to use (drawdown) those awarded funds (stop payment status) until the institution has satisfied its CARES Act HEERF reporting obligations.

**Grant Administration**

10. **Question:** Do the existing CARES Act HEERF FAQs still apply?

    **Answer:** The existing CARES Act HEERF FAQs continue to apply to an institution's previous expenditures under its existing CARES Act HEERF grants prior to December 27, 2020. As explained by Question 7, CRRSAA section 314(d)(2) allows institutions expanded use of funds authority for unexpended CARES Act funds. The Department is in the process of identifying and clarifying which specific FAQs may continue to be relied upon with the new CRRSAA and for an institution's unexpended CARES Act funds.

11. **Question:** Does the June 17, 2020 Interim Final Rule (IFR) (85 FR 36494) limiting student eligibility for emergency financial aid grants under the CARES Act to students who are or could be eligible to participate in the Department's Title IV Federal student financial aid programs under HEA Section 484 apply to HEERF programs under CRRSAA?

    **Answer:** No. The IFR and its implementing regulation, 34 CFR § 668.2, apply only to funds made available under the CARES Act and not to funds made available under CRRSAA.

EXHIBIT 6 - 4

**12. Question:** When should my institution draw down funds once they have been obligated by the Department?

**Answer:** Although the entire amount of a grantee's (a)(4) award will be available to the grantee as soon as it has been obligated by the Department, under 2 CFR § 200.305(b), HEERF grantees are under an obligation to minimize the time between drawing down funds from G5 and paying obligations incurred by the grantee (liquidation). If a HEERF grantee is using HEERF grant funds to make financial aid grants to students, the Department may evaluate for compliance with the rule grantees who have not drawn down the funds from G5 and not paid the obligations (the financial aid grants to students) to the students within fifteen calendar days. For all other allowable uses, the Department may evaluate grantees who have not taken these steps within three calendar days. This enhanced flexibility for student grant programs is because students may not accept and draw down their financial aid grants from grantees' accounts within the three day window, or an institution may experience difficulties in contacting eligible students due to factors related to the pandemic.

**13. Question:** Can my proprietary institution charge indirect or administrative costs to the (a)(4) grant award?

**Answer:** No. Proprietary institutions may not charge any indirect or administrative costs to funds made available under this award as the allocation in this grant award represents an amount of funds that must be distributed to students.

**14. Question:** Do proprietary institutions have to submit an audit regarding the use and expenditure of HEERF grant funds?

**Answer:** It depends. Proprietary institutions must have a compliance audit conducted of its administration of the HEERF grant(s) for any institutional fiscal year during which: (1) the institution expended $500,000 or more in total HEERF grant funds, whether under section 18004(a)(1) of the CARES Act or section 314(a)(4) of the CRRSAA, or (2) was on Federal Student Aid's Heightened Cash Monitoring (HCM) 1 or 2 list during any point of the institution's fiscal year in which it expended any HEERF grant funds. The Department will communicate with grantees on timing and audit submission procedures.

**15. Question:** Where can I obtain more information about the HEERF program?

**Answer:** Institutions should regularly check our HEERF II CRRSAA website for the latest CRRSAA information and program guidance. For earlier CARES Act information and program guidance, please check our HEERF CARES Act website here.

**EXHIBIT 6 - 5**

# Exhibit 7

Stephen T. Chema
Also admitted to practice in Maryland
and the District of Columbia



703-934-9835 Direct
stchema@glpclaw.com

# GOMBOS | LEYTON PC

### ATTORNEYS

11350 Random Hills Road | Suite 400 | Fairfax, Virginia 22030
703.934.2660 Main | 703.934.9840 Fax | www.glpclaw.com

March 17, 2021

**By Overnight Delivery and Email (Michelle.Cooper@ed.gov)**
Michelle Asha Cooper
Acting Assistant Secretary for Postsecondary Education
400 Maryland Ave., S.W.
Washington, D.C. 20202

**Re:     Grand Canyon University's nonprofit status for HEERF fund purposes.**

Dear Ms. Cooper:

Our firm represents Grand Canyon University ("GCU"). We are writing because the Department of Education has incorrectly classified GCU as a for-profit institution for direct grants available through the Higher Education Emergency Relief Fund ("HEERF"), HEERF II, and HEERF III (collectively, "HEERF"). GCU requests that the Department immediately correct this error and allocate funds to GCU as a nonprofit.

As I am sure you are aware, HEERF funds are not Title IV funds. Rather, HEERF funds are available as a direct grant program.[1] *See* 34 C.F.R. 77.1 ("Definitions that apply to all Department programs") ("Direct grant program means any grant program of the Department other than a program whose authorizing statute or implementing regulations provide a formula for allocating program funds among eligible States").

Because HEERF funds are available under direct grant programs, the Secretary must distribute them under the General Education Provisions Act. 34 CFR 75.1(b). Those provisions expressly state that an institution is a nonprofit for Direct Grant Programs if it is recognized by the IRS as a 501(c)(3) tax-exempt entity. 34 CFR 75.51(b)(1).

Attached to this letter is proof of GCU's 501(c)(3) status. Although you personally may not know that GCU is a recognized 501(c)(3), the Department of Education is already aware that the IRS recognizes GCU as a 501(c)(3). In any event, the attached recognition letter is conclusive proof of GCU's nonprofit status for HEERF purposes.

---

[1] These direct grant programs are the Higher Education Emergency Relief Fund, which was established in the Coronavirus Aid, Relief and Economic Security Act, Pub. Law 116-136 ("CARES Act"), and for which Congress made supplemental appropriations in the Coronavirus Response and Relief Supplemental Appropriations Act, Pub. Law 166-260 ("CRRSAA"), and the more recent American Rescue Plan Act, Pub. Law 117-2 ("ARPA").

**EXHIBIT 7 - 1**

Michelle Asha Cooper
March 17, 2021
Page 2

It is possible the Department misclassified GCU as a for-profit for HEERF Funds by relying on its PEPS system, which identifies GCU as a for-profit for Title IV purposes. Of course, this only considers an institution's status for Title IV purposes and the Department has expressly stated that it does not take a position with respect to GCU's 501(c)(3) status with the IRS. While the Department has taken the position that 501(c)(3) status is not determinative for Title IV purposes,[2] the Department's regulations are clear that 501(c)(3) status **is** determinative for direct grant programs, such as HEERF. Because IRS recognition does conclusively establish nonprofit status for direct grant programs under the Department's regulations, GCU is properly classified as a nonprofit for HEERF purposes.

The Department's improper classification deprives GCU's students of substantial aid and resources. Under HEERF II, only 3 percent of the available funds are allocated to proprietary institutions (compared with 89 percent to public and nonprofit institutions), and under HEERF III, only 1 percent is allocated to proprietary institutions (compared with 91 percent to public and nonprofit institutions). HEERF II and HEERF III use the same formula to allocate funds to institutions in the public and private nonprofit pool and in the for-profit pool. Based on its student population, GCU's proportionate share of HEERF funds was reduced when the Department classified it as a for profit entity.

GCU intends to provide the substantial majority of all HEERF II and III funds directly to students. For comparison, GCU received $11,175,699 in student grant funds and $11,175,699 in institutional grant funds under HEERF I. As of December 31, 2020, GCU disbursed 100% of the student grant portion directly to 18,420 eligible students.[3] For the institutional portion, GCU retained $3,055,807 to offset housing refunds issued to students in the spring semester, and disbursed the rest to 16,239 student as additional emergency fund grants, representing 72.66% of GCU's "institutional portion" of HEERF I. In total, GCU directed 86% of HEERF I funds directly to students. The remainder funded additional student refunds for housing. GCU plans to continue directing HEERF funds to students to the greatest extent allowable.

We ask that the Department immediately reclassify GCU as a nonprofit for HEERF purposes and allocate HEERF II funds accordingly. And, as HEERF III funds become available, the Department must continue to allocate funds to GCU as a nonprofit. Because the HEERF II

---

[2] GCU disagrees with the Department's position that 501(c)(3) status is not determinative for Title IV purposes. For this reason, and others, GCU filed a Complaint in the District of Arizona seeking judicial review of the Department's decision to treat GCU as a for-profit for Title IV purposes (Civil Action No. 2:21-cv-00177). The Department has not yet filed responsive pleadings.

[3] Under HEERF I eligibility rules, distribution of emergency financial aid grants could only be made to on-ground students who had incurred costs due to the disruption of campus operations due to the COVID-19 pandemic, and after the Department published its Interim Final Rule on June 17, 2020 ("IFR"), emergency financial aid grants to students could only be made to students who had demonstrated eligibility for federal student aid. Per the Department's subsequent guidance, the IFR does not apply to HEERF II and HEERF III.



**EXHIBIT 7 - 2**

Michelle Asha Cooper
March 17, 2021
Page 3

and HEERF III funds have been appropriated by Congress, and institutions are encouraged to expend those funds quickly in response to the current national emergency, time is of the essence. Once the funds are allocated to other schools, GCU will no longer be able to claim them. Therefore, we must receive confirmation of the Department's recognition of GCU's nonprofit status for HEERF purposes no later than March 22, 2021.

If we do not receive confirmation by that date, GCU has no alternative but to seek immediate declaratory and/or injunctive relief in federal court to verify its entitlement to receive HEERF funds as a nonprofit institution.

Thank you for your prompt attention to this matter.  Should you have any questions, please do not hesitate to contact me.

Sincerely,

Stephen T. Chema II

cc:     Emma Leheny, Acting General Counsel (via overnight delivery)
        Client (via email)



**EXHIBIT 7 - 3**

INTERNAL REVENUE SERVICE                    DEPARTMENT OF THE TREASURY
P. O. BOX 2508
CINCINNATI, OH  45201

Date: **NOV 0 9 2015**

                                    Employer Identification Number:
                                      47-2507725
                                    DLN:
                                      17053292313005
GAZELLE UNIVERSITY                  Contact Person:
3300 WEST CAMELBACK RD BLD 3          ROGER W VANCE              ID# 31173
PHOENIX, AZ  85017-3030             Contact Telephone Number:
                                      (877) 829-5500
                                    Accounting Period Ending:
                                      June 30
                                    Public Charity Status:
                                      170(b)(1)(A)(ii)
                                    Form 990/990-EZ/990-N Required:
                                      Yes
                                    Effective Date of Exemption:
                                      November 20, 2014
                                    Contribution Deductibility:
                                      Yes
                                    Addendum Applies:
                                      No

Dear Applicant:

We're pleased to tell you we determined you're exempt from federal income tax
under Internal Revenue Code (IRC) Section 501(c)(3). Donors can deduct
contributions they make to you under IRC Section 170. You're also qualified
to receive tax deductible bequests, devises, transfers or gifts under
Section 2055, 2106, or 2522. This letter could help resolve questions on your
exempt status. Please keep it for your records.

Organizations exempt under IRC Section 501(c)(3) are further classified as
either public charities or private foundations. We determined you're a public
charity under the IRC Section listed at the top of this letter.

If we indicated at the top of this letter that you're required to file Form
990/990-EZ/990-N, our records show you're required to file an annual
information return (Form 990 or Form 990-EZ) or electronic notice (Form 990-N,
the e-Postcard). If you don't file a required return or notice for three
consecutive years, your exempt status will be automatically revoked.

If we indicated at the top of this letter that an addendum applies, the
enclosed addendum is an integral part of this letter.

For important information about your responsibilities as a tax-exempt
organization, go to www.irs.gov/charities. Enter "4221-PC" in the search bar
to view Publication 4221-PC, Compliance Guide for 501(c)(3) Public Charities,
which describes your recordkeeping, reporting, and disclosure requirements.

                                                    Letter  947

**EXHIBIT 7 - 4**

GAZELLE UNIVERSITY

Sincerely,

Jeffrey I. Cooper
Director, Exempt Organizations
Rulings and Agreements

Letter  947

**EXHIBIT 7 - 5**

 **IRS** Department of the Treasury
Internal Revenue Service

OGDEN   UT   84201-0029

In reply refer to:  4077967774
Aug. 31, 2018  LTR 4168C   0
47-2507725   000000 00
                    00023792
          BODC: TE

GRAND CANYON UNIVERSITY
3300 W CAMELBACK RD
PHOENIX  AZ  85017-3030



011517

     Employer ID number:  47-2507725
     Form 990 required:  Yes

Dear Taxpayer:

We're responding to your request dated July 17, 2018, about your
tax-exempt status.

We issued you a determination letter in November 2015, recognizing
you as tax-exempt under Internal Revenue Code (IRC) Section 501(c)
(3).

We also show you're not a private foundation as defined under IRC
Section 509(a) because you're described in IRC Sections 509(a)(1) and
170(b)(1)(A)(ii).

Donors can deduct contributions they make to you as provided in IRC
Section 170. You're also qualified to receive tax deductible bequests,
legacies, devises, transfers, or gifts under IRC Sections 2055, 2106,
and 2522.

In the heading of this letter, we indicated whether you must file an
annual information return. If you're required to file a return, you
must file one of the following by the 15th day of the 5th month after
the end of your annual accounting period:

    - Form 990, Return of Organization Exempt From Income Tax
    - Form 990EZ, Short Form Return of Organization Exempt From Income
      Tax
    - Form 990-N, Electronic Notice (e-Postcard) for Tax-Exempt
      Organizations Not Required to File Form 990 or Form 990-EZ
    - Form 990-PF, Return of Private Foundation or Section 4947(a)(1)
      Trust Treated as Private Foundation

According to IRC Section 6033(j), if you don't file a required annual
information return or notice for 3 consecutive years, we'll revoke
your tax-exempt status on the due date of the 3rd required return or
notice.

You can get IRS forms or publications you need from our website at
www.irs.gov/forms-pubs or by calling 800-TAX-FORM (800-829-3676).

If you have questions, call 877-829-5500 between 8 a.m. and 5 p.m.,

**EXHIBIT 7 - 6**

```
                                                    4077967774
                           Aug. 31, 2018  LTR 4168C    0
                           47-2507725    000000 00
                                                      00023793
```

GRAND CANYON UNIVERSITY
3300 W CAMELBACK RD
PHOENIX  AZ  85017-3030


local time, Monday through Friday (Alaska and Hawaii follow Pacific
time).

Thank you for your cooperation.


                              Sincerely yours,


                              Stephen A. Martin
                              Director, EO Rulings & Agreements


**EXHIBIT 7 - 7**

Exhibit 8



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE OF POSTSECONDARY EDUCATION

March 26, 2021

<u>By Email Only</u>
Stephen T. Chema
Gombos Leyton PC
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
stchema@glpclaw.com

**Re: HEERF Inquiry**

Dear Mr. Chema,

I am writing to respond to your March 17, 2021 letter regarding Grand Canyon University's eligibility for certain programs established under the Higher Education Emergency Relief Fund (HEERF).

The HEERF programs were originally enacted through the Education Stabilization Fund within the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act (Pub. L. 116-136). This law provided approximately $14 billion in funds to be distributed through the Department of Education (Department) to institutions of higher education through the HEERF programs. The CARES Act established three main funding streams for the HEERF programs, through the following sections:

- 18004(a)(1), to be distributed to "each <u>institution of higher education</u>," (IHE) based on a formula outlined by Congress;
- 18004(a)(2), to be distributed to historically black colleges and universities, tribally controlled colleges and universities, and certain minority serving institutions; and
- 18004(a)(3), to be distributed under part B of title VII of the Higher Education Act of 1965, as amended (HEA) to IHEs that the Secretary determines have the greatest unmet needs related to coronavirus.

Section 18007 of the CARES Act set out the general definitions applicable to all Education Stabilization Fund programs, including the HEERF programs.  Section 18007(2) specified that "the term '<u>institution of higher education</u>' has the meaning given such term in title I of the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.)."  Because this definition encompassed all of title I of the HEA, the Department interpreted an eligible "institution of higher education" under 18004(a)(1) of the CARES Act to be inclusive of eligible institutions under either Section

The Department's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

**EXHIBIT 8 - 1**

101 or 102 of the HEA.  As a proprietary institution under Section 102(b) of the HEA, Grand Canyon University received funds through Section 18004(a)(1) of the CARES Act.

Subsequently, on December 27, 2020, President Trump signed into law the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 (CRRSAA) (Pub. L. 116-260). This law made available an additional approximate $22.7 billion for IHEs under HEERF programs (referred to herein as HEERF II or CRRSAA funding), with funding appropriated for the existing (a)(1), (a)(2) and (a)(3) programs previously authorized under Section 18004 of the CARES Act, as well as funding for a new (a)(4) program authorized under the CRRSAA.

Unlike the CARES Act, the CRRSAA established new eligibility requirements under the (a)(1) funding stream. Specifically, CRRSAA requires these funds to be distributed via a six-part formula established by Congress to "each institution of higher education as defined in section 101 or section 102(c) of the HEA." *See* CRRSAA §314(a)(1). Additionally, Section 314(a)(4) of CRRSAA created a new funding stream for "institutions of higher education as defined in section 102(b) of the HEA" (*i.e.,* proprietary institutions of higher education) that used the same six-part allocation formula as the (a)(1) funds.  As a proprietary institution under Section 102(b) of the HEA, Grand Canyon University received funds through Section 314(a)(4) of the CRRSAA.

Finally, on March 11, 2021, President Biden signed into law the American Rescue Plan of 2021 (ARP) (Pub. L. 117-2). This bill appropriated an additional approximately $39.6 billion for the HEERF programs (HEERF III or ARP funding), in a manner closely mirroring the CRRSAA framework, with funding distributed under CRRSAA's (a)(1), (a)(2), (a)(3) and (a)(4) programs. Therefore, as with CRRSAA, Congress chose within the ARP to establish a unique funding stream under (a)(4) for "institutions of higher education as defined in section 102(b) of the HEA[.]"  As a proprietary institution under Section 102(b) of the HEA, Grand Canyon University is eligible for ARP funding as it was under Section 314(a)(4) of the CRRSAA.

HEERF programs are direct grant programs, because they do not "allocat[e] funds among eligible States."  34 CFR §§ 75.1(b), § 77.1(c); *see also* 34 CFR § 75.200(a).  That does not mean, however, that "the Secretary must distribute [HEERF funds] under the General Education Provisions Act," in particular 34 C.F.R. § 75.51(b)(1), as your letter claims.  The provisions of 34 CFR parts 75 and 77 are necessarily superseded by the specific requirements for HEERF funds established by Congress within the CARES Act, CRRSAA, and ARP, respectively, as the regulations themselves provide.

To begin with, under 34 CFR § 75.1(b), "the Secretary implements the program under the authorizing statute and, to the extent consistent with the authorizing statute, under the General Education Provisions Act and the regulations in this part."  Similarly, the definitions in 34 CFR § 77.1(c) only apply "[u]nless a statute or regulation provides otherwise."  And 34 CFR § 75.51, on "How to prove nonprofit status," only applies to "some programs" and incorporates the limitations of section 77.1.

In the case of the HEERF funds, the plain text of the CARES Act, CRRSAA, and ARP control the eligibility of Grand Canyon University.

2

EXHIBIT 8 - 2

CRRSAA does not require institutions to simply establish that they are recognized by the IRS as 501(c)(3) tax-exempt organization to receive funding. Rather, CRRSAA requires an institution to establish that it is an "institution of higher education as defined in section 101 or section 102(c) of the HEA" for the purposes of CRRSAA's (a)(1) program, or that it meets the definition of "institutions of higher education as defined in section 102(b) of the HEA" for the purpose of CRRSAA's (a)(4) program. Section 102(b) of the HEA defines a "proprietary institution of higher education" as one that, *inter alia,* "does not meet the requirements of paragraph (4) of section 101(a) [i.e., it is not a public or other nonprofit institution]."  HEA § 102(b)(1)(C). Neither the HEA nor its implementing regulations include 501(c)(3) designation by the IRS as the sole determining factor for nonprofit status under the HEA.  *See* HEA § 103(13) (definition of a nonprofit) and 34 CFR § 600.2 (same).  Notably, HEA § 103(13) does not even mention 501(c)(3) exempt status, and 34 CFR § 600.2 mentions it as one of the requirements.

Further, an institution's eligibility under sections 101, 102(b) or 102(c) of the HEA must meet the requirements of the Department's implementing regulations defining eligible institutions under 34 CFR §§ 600.4, 600.5, and 600.6 (as well as the definition of a "nonprofit" under 600.2) rather than the default definition applicable to making general grants to nonprofit organizations under 34 CFR § 75.51 (to include organizations that are not institutions of higher education).

As a result of the eligibility designations established within the CARES Act, CRRSAA, and ARP, as well as Congress's direction that the Department distribute funding "using the same systems as the Secretary otherwise distributes funding to each institution under title IV of the Higher Education Act of 1965," the Department made allocations to institutions based upon their existing designation by the Department as a nonprofit, proprietary or postsecondary vocational institution within the Department's title IV systems, consistent with the eligibility framework established by Congress. Thus, the Department was correct to allocate funding to Grand Canyon University under CRRSAA (a)(4) as an institution of higher education as defined in section 102(b) of the HEA.

We hope this explanation adequately responds to GCU's March 17 letter. The Department commends Grand Canyon University's commitment of its HEERF funding to its students as they work to continue their education through the coronavirus pandemic, and we hope that the additional funding made available under CRRSAA and ARP will be used to meet the ongoing educational needs of these students.

Sincerely,

Michelle Asha Cooper
Acting Assistant Secretary for
Postsecondary Education

**EXHIBIT 8 - 3**

Exhibit 9

# Higher Education Emergency Relief Fund (HEERF) Frequently Asked Questions (FAQ) Rollup Document



**Issued October 14, 2020**
**Question 49 Updated November 20, 2020**

<div style="border:1px solid black">

**<u>Disclaimer</u>:**  This guidance is related to Section 18004 of the Coronavirus Aid, Relief, and Economic Security (CARES Act), Pub. L. No. 116-136 (March 27, 2020).  Guidance in this document as to allowable and unallowable uses are applicable for HEERF costs incurred before the effective date of the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 (CRRSAA), Pub. L. 116-260, which is December 27, 2020.

Please check the Department's <u>HEERF II website</u> on a periodic basis for any guidance as to unspent (as of December 27, 2020) CARES Act HEERF funds and CRRSAA HEERF funds.

</div>

These FAQs constitute a guidance document. Guidance documents represent the Department of Education's current thinking on a topic. They do not create or confer any rights for or on any person or entity and do not impose any requirements beyond those required under applicable laws and regulations described. Guidance documents themselves lack the force and effect of law. For more information, see the <u>U.S. Department of Education's Guidance Homepage</u>.

**EXHIBIT 9 - 1**

# HEERF FAQ Rollup Document

## Table of Contents

A.  General Questions .................................................................................................... 3

B.  Grant Administration Requirements ........................................................................ 4

C.  Eligibility for Students and Title IV .......................................................................... 7

D.  Questions from Students ............................................................................................ 9

E.  Use of Funds – Emergency Financial Aid to Students............................................... 9

F.  Use of Funds – (a)(1) Institutional Portion, (a)(2), and (a)(3) Programs ......................... 13

G.  Data Collection ....................................................................................................... 22

H.  More Information..................................................................................................... 22

**EXHIBIT 9 - 2**

# A. General Questions

1. **Question:** Which previously-issued FAQ documents are included in this Rollup Document?

   **Answer:** The following five FAQ documents are included in this Rollup Document:

   - CARES Act HEERF Round 3 FAQs (October 2, 2020)
   - CARES Act HEERF Supplemental FAQs (Issued June 30, 2020 and Revised September 8, 2020)
   - CARES Act HEERF Student FAQs (May 15, 2020)
   - CARES Act HEERF Emergency Financial Aid Grants to Students under Section 18004(a)(1) and 18004(c) FAQs (April 9, 2020) ("Student Portion FAQs")
   - CARES Act HEERF Institutional Portion under Section 18004(a)(1) and 18004(c)FAQs (April 9, 2020) ("Institutional Portion FAQs")

   The FAQs in this Rollup Document are taken from these previously-issued documents listed above. They are categorized and complied into this one Rollup Document to maximize the convenience and accessibility of our FAQs for our HEERF grantee community.

2. **Question:** What programs do these FAQs apply to?

   **Answer:** While this depends on the circumstances specific to each FAQ, these FAQs generally apply to the following HEERF programs:

   | Program (with link to website) | CFDA | CARES Act Section |
   |---|---|---|
   | Student Portion | 84.425E | 18004(a)(1) |
   | Institutional Portion | 84.425F | 18004(a)(1) |
   | Historically Black Colleges and Universities (HBCUs) | 84.425J | 18004(a)(2) |
   | Tribally Controlled Colleges and Universities (TCCUs) | 84.425K | 18004(a)(2) |
   | Minority Serving Institutions (MSIs) | 84.425L | 18004(a)(2) |
   | Strengthening Institutions Program (SIP) | 84.425M | 18004(a)(2) |
   | Fund for the Improvement of Postsecondary Education (FIPSE) Formula Grant | 84.425N | 18004(a)(3) |

   The FAQs in this rollup document do not apply to the Institutional Resilience and Expanded Postsecondary Opportunity (IREPO) grant competition (FIPSE Competitive Grant). More information regarding that program is available here: https://www2.ed.gov/about/offices/list/ope/heerfirepo.html.

**EXHIBIT 9 - 3**

# B. Grant Administration Requirements

3.  **Question:** If an institution does not enter into the Funding Certification and Agreement for Emergency Financial Aid Grants to Students under the CARES Act, may the institution still receive funds for Recipient's Institutional Costs?

    **Answer:** No. An institution must have entered into the Funding Certification and Agreement for Emergency Financial Aid Grants to Students under the CARES Act to receive funds for Recipient's Institutional Costs. (Institutional Portion FAQs).

4.  **Question:** Who must sign the Certification and Agreement for the Institutional Portion of the HEERF Formula Grants Authorized by Sections 18004(a)(1) and 18004(c) of the CARES Act?

    **Answer:** An institution's authorized representative must sign the Certification and Agreement. Typically, that person is the institution's president, chancellor, or Chief Executive Officer (CEO), or their delegated representative. (Institutional Portion FAQs).

5.  **Question:** What obligation does an institution have to continue to pay all its employees after accepting the funds for the emergency financial aid grants to students?

    **Answer:** The CARES Act requires each institution that accepts funds from the HEERF, including funds used to pay emergency financial aid grants, to continue to pay employees and contractors to the greatest extent practicable based on the unique financial circumstances of each institution; however, institutions may not use emergency financial aid grants to students to pay employees and contractors. (Student Portion FAQs).

6.  **Question:** What is the deadline (project period or period of performance) for institutions to spend HEERF funds received under the CARES Act?

    **Answer:** All institutions were given 1 calendar year (365 days) from the date of award in their HEERF Grant Award Notification (GAN) to complete the performance of their HEERF grant.[1] Therefore, for example, if a grantee received a GAN on April 7, 2020, the one calendar year period of performance for their HEERF grant would be through April 6, 2021.

    Please note that after the end of the year-long period of performance, grantees have an additional 90 calendar days to liquidate their obligations made during their year-long period of performance as part of the grant closeout procedures (2 CFR § 200.343(b)).

    The Department understands that some grantees, even given the emergency nature of the HEERF grant, may be unable to obligate funds by this time. Consequently, no-cost extensions (NCEs) of up to 12 months are available as provided for in 2 CFR §

---

[1] See Box 6 in your HEERF GAN ("Federal Funding Period"). All HEERF grant programs received a 1 calendar year period of performance from their GAN.

**EXHIBIT 9 - 4**

200.308(d)(2). NCEs may not be exercised merely for the purpose of using unobligated balances. Given the emergency nature of HEERF grants, the Department does not intend an NCE to extend longer than 12 months.   HEERF grantees are encouraged to discuss any need for an NCE with their respective program officer well in advance of the end of their grant period of performance.

For general information about grant management, grantee responsibilities, and grant closeout, please consult our guide, *Grantmaking at ED*, available here. (Supplemental FAQs).

7. **Question:** If an institution chooses to only use some of its HEERF allocation, if the funds are encumbered, but not yet spent by the end of the HEERF grant performance period, will the funds be reclaimed by the Department?

   **Answer:** Yes, the Department may reclaim those funds. Institutions were given one calendar year (365 days) from the date of award in their HEERF Grant Award Notification (GAN) to complete the performance of their HEERF grants.[2] Therefore, for example, if a grantee received a GAN on April 7, 2020, the one calendar year period of performance for its HEERF grant would be through April 6, 2021.

   After the one calendar year period of performance, a grantee has 90 days to liquidate (or make final payment on) previously obligated funds**.** Grant closeout procedures are described in more detail in 2 CFR § 200.343.

   The point of emergency funds is to spend them immediately to cover costs or losses, as applicable, associated with the emergency. However, the Department understands that changes in enrollment levels, the need to reserve funds in the event that the emergency is prolonged, or other challenges, may render a campus unable to obligate all of their funds by the end of the award year. Consequently, no-cost extensions (NCEs) of up to 12 months are available as provided for in 2 CFR § 200.308(d)(2). NCEs may not be exercised merely for the purpose of using unobligated balances. Given the emergency nature of HEERF grants, the Department does not intend an NCE to extend longer than 12 months. HEERF grantees are encouraged to discuss any need for an NCE with their respective program officer well in advance of the end of their grant period of performance.

   See also the Department's revised response to question 1 in our HEERF CARES Act Supplemental FAQs released on June 30, 2020 and revised on September 8, 2020. (Round 3 FAQs).

8. **Question:** Do all of the requirements in the *Uniform Administrative Requirements, Cost Principles, And Audit Requirements For Federal Awards* (the "Uniform Guidance," at 2 CFR part 200) apply to the HEERF grants?

---

[2] See Box 6 in your HEERF GAN ("Federal Funding Period").

**EXHIBIT 9 - 5**

**Answer:** Yes. The Department has consistently held that grant funds awarded under the HEERF are subject to the requirements of the Uniform Guidance in 2 CFR part 200. Notice of the applicability of these provisions was provided in the Certification and Agreement documents that all grantees affirmatively signed prior to submitting their requests for funding, as well as in each Grant Award Notice (GAN).

Where a conflict may exist between the provisions of the CARES Act and those of 2 CFR part 200, the CARES Act would supersede. The Department remains available to answer any questions you might have about the applicability of certain provisions of 2 CFR part 200 to your HEERF grant. Proper administration of these funds will be subject to audit and should be taken seriously by each grantee. (Round 3 FAQs).

9. **Question:** My institution drew down the full amount of its Student Aid Portion allocation under section 18004(a)(1) soon after it was made available. However, we have not been able to fully distribute the emergency financial aid grants to students as quickly as planned. Does my institution need to refund the portion not yet spent?

   **Answer:** In accordance with 2 CFR § 200.305(b) of the Uniform Guidance, which applies to the HEERF grants, grantees must seek to minimize the time between drawing down funds from the G5 system and applying those funds to support a grant award's activities. Consistent with this requirement, grantees must maintain grant funds in interest-bearing accounts, and any interest earned on grant funds above $500 per year must be remitted to the Federal government.

   Therefore, the Department encourages grantees to establish a distribution plan prior to an initial draw down of grant funds. In addition, we urge grantees to only draw down the minimum amount of grant funds necessary, and where the grant funds are able to be applied promptly to each HEERF grant's purposes.

   Based on the circumstances described above, an institution should refund any portion of the HEERF award that it does not have an immediate ability to expend on emergency financial grants to students, until the institution has a plan for the orderly distribution of the remainder of the funds. It can then be re-drawn from the institution's account in G5. (Round 3 FAQs).

10. **Question:** Can an institution incur costs on a "pre-award" basis, or do we need to wait for a GAN and an actual start date?

    **Answer:** Yes, a HEERF applicant may incur pre-award costs. Generally, under 2 CFR § 200.458 and 200.308(d)(1), a grantee may incur project costs 90 calendar days before the Federal awarding agency makes the Federal award. However, an institution should understand that it is not guaranteed any funding that the Department has not committed to it in a GAN.

    Such costs must be directly pursuant to the negotiation and in anticipation of the Federal award where such costs are necessary for efficient and timely performance of the scope

6

EXHIBIT 9 - 6

of work. Such costs are allowable only to the extent that they would have been allowable if incurred after the date of the Federal award.

However, for all Education Stabilization Funds (ESF), including HEERF, no pre-awards costs are permissible for any expenditure incurred prior to March 13, 2020, the date the President declared the national emergency due to COVID-19. (Round 3 FAQs).

11. **Question:** Will funds provided through the CARES Act be included in an institution's 90/10 calculation?

**Answer:** Funds paid directly to institutions by the Department through the HEERF will not be included as revenue for 90/10 purposes. (Student Portion FAQs).

12. **Question:** Does an institution need to know its allocated amount under section 18004(a)(3) of the CARES Act to apply for such funds?

**Answer:** Yes. The amount must be entered on the SF-424 form, although if the amount is not known at the time of application, an applicant may leave the amount blank. The allocation table is now available at https://www2.ed.gov/about/offices/list/ope/finalallocationcaresactsec18004a3.xlsx.

In addition, the Department has recently issued a notice inviting applications for the Institutional Resilience and Expanded Postsecondary Opportunity (IREPO) Grant Program Competition (FIPSE Competitive Grant), with more information available here: https://www2.ed.gov/about/offices/list/ope/heerfirepo.html. (Round 3 FAQs).

## C. Eligibility for Students and Title IV

13. **Question:** What students are eligible to receive emergency financial aid grants from the HEERF?

**Answer:** Only students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial aid grants. If a student has filed a Free Application for Federal Student Aid (FAFSA), then the student has demonstrated eligibility to participate in programs under Section 484 the HEA. Students who have not filed a FAFSA but who are eligible to file a FAFSA also may receive emergency financial aid grants. The criteria to participate in programs under Section 484 of the HEA include but are not limited to the following: U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is male); and a high school diploma, GED, or completion of high school in an approved homeschool setting. (Student Portion FAQs).[3]

---

[3] This FAQ has been superseded by the June 17, 2020 release of an Interim Final Rule (IFR) (85 FR 36494) regarding student eligibility and subsequent litigation. For more information, please visit the HEERF Litigation Updates website here: https://www2.ed.gov/about/offices/list/ope/heerfupdates.html.

**EXHIBIT 9 - 7**

14. **Question:** The Department has stated that a student must file a Free Application for Federal Student Aid (FAFSA) or be eligible to file a FAFSA to receive an emergency financial aid grant from the Student Aid Portion of an institution's allocation under section 18004(a) of the CARES Act. I have a student that has filed a FAFSA but is at the maximum federal loan limits and is not eligible for a Pell grant due to his or her Expected Family Contribution (EFC). Is this student eligible to receive an emergency financial aid grant?

**Answer:** We understand that our original language was imprecise because, indeed, any student can file a FAFSA. We would like to clarify that  any student eligible to participate in title IV programs, as demonstrated by the school having received an ISIR for that student, or through the use of an alternative application or certification developed by the institution, may receive funding under the CARES Act section 18004(a). The student merely needs to demonstrate that he or she meets the eligibility criteria for federal student aid (also known as Title IV aid) under Title IV of the Higher Education Act of 1965, as amended (HEA).  In addition, a student who has met their Title IV aid limits (e.g., annual loan limits or Pell limits) would still be considered eligible for an emergency financial aid grant because they can still demonstrate their initial eligibility for Title IV. As the emergency financial aid grants under the CARES Act are not considered Title IV aid, the Title IV aid limits do not prevent or control the amount of emergency financial aid that an eligible student may receive under the CARES Act. (Round 3 FAQs).

15. **Question:** After the Department made the Student Aid Portion of institutions' allocations under section 18004(a)(1) of the CARES Act available, it published an interim final rule stating that only students eligible for Title IV aid may receive emergency financial aid grants provided with such funds. My institution distributed some emergency financial aid grants to students, including non-Title IV aid eligible students, before the interim final rule was published. Was this use of funds allowable?

**Answer:** Although the distribution described runs counter to the requirements described in the Interim Final Rule (IFR) published by the Department on June 17, 2020 (see below), the Department will not take enforcement action against the distribution because the IFR was not yet in effect.

On June 17, 2020, the Department published an IFR effective the same day, regarding the eligibility of students at institutions of higher education under the CARES Act, which constitutes the Department's binding final rule regarding student eligibility for HEERF assistance and carries the force of law except as enjoined in several lawsuits, as described on the Higher Education Emergency Relief Fund Litigation Updates website. As the IFR is not intended to have retroactive effect, the Department will not initiate any enforcement action based solely upon its early guidance as to student eligibility for HEERF emergency student financial aid grants that were disbursed to students prior to the effective date of the IFR (June 17, 2020). Please note, however, that the underlying statutory terms in the CARES Act are legally binding, as are any other applicable statutory terms, such as the restriction in 8 U.S.C. § 1611 on eligibility for Federal public benefits including such grants. (Round 3 FAQs).

**EXHIBIT 9 - 8**

## D. Questions from Students

**16. Question:** Do I have to repay the emergency financial aid grant I received from my university through the CARES Act?

**Answer:** No. The funds provided by the CARES Act are grants, so they do not need to be repaid. (Students' FAQs).

**17. Question:** I am a student who received an emergency financial aid grant from my university through the CARES Act. Is this grant includible in my gross income?

**Answer:** No. According to the Internal Revenue Service, "Emergency financial aid grants under the CARES Act for unexpected expenses, unmet financial need, or expenses related to the disruption of campus operations on account of the COVID-19 pandemic, such as unexpected expenses for food, housing, course materials, technology, health care, or childcare, are qualified disaster relief payments under section 139."

For more information please visit: https://www.irs.gov/newsroom/faqs-higher-educationemergency-relief-fund-and-emergency-financial-aid-grants-under-the-cares-act. (Students' FAQs).

**18. Question:** What can emergency financial aid grants provided by the CARES Act be used for?

**Answer:** Emergency financial aid grants to students can be used for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care). Please click here for more information about what is included in a student's cost of attendance. (Students' FAQs).

## E. Use of Funds – Emergency Financial Aid to Students

**19. Question:** How must institutions pay the emergency financial aid grants to students?

**Answer:** Institutions may provide emergency financial aid grants to students using checks, electronic transfer payments, debit cards, and payment apps that adhere to the Department's requirements for paying credit balances to students. The disbursement of the emergency financial aid grant to the student must remain unencumbered by the institution; debts, charges, fees, or other amounts owed to the institution may not be deducted from the emergency financial aid grant. The emergency financial aid grant may not be made to students through the use of a credit card that can be used only on campus or in a retail outlet affiliated with the institution. (Student Portion FAQs).

**20. Question:** At institutions that provide both online and ground-based education, are students who were enrolled exclusively in online programs prior to the national emergency due to the coronavirus eligible to receive emergency financial aid grants?

9

**EXHIBIT 9 - 9**

**Answer:** At institutions that provide both online and ground-based education, those students who were enrolled exclusively in an online program on March 13, 2020, the date of the President's Proclamation, "[Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak](#)," *Federal Register* Vol. 85, No. 53 at 15337-38, are not eligible for emergency financial aid grants. The formula provided by Congress for calculating the distribution of funds to institutions excludes students who were exclusively enrolled in distance education courses. Additionally, the emergency financial aid grants to students are for expenses related to the disruption of campus operations due to coronavirus, and students who were enrolled exclusively in online programs would not have expenses related to the disruption of campus operations due to coronavirus. (Student Portion FAQs).

21. **Question:** Online students may not have faced interruptions of their education, but they face significant financial hardships as a result of the coronavirus. May institutions that provide both online and ground-based education use the funds for Recipient's Institutional Costs to provide emergency financial aid grants to students who were enrolled exclusively in online programs prior to the national emergency?

    **Answer:** No. At institutions that provide both online and ground-based education, those students who were enrolled exclusively in online programs on March 13, 2020, the date of the Proclamation of National Emergency, are not eligible for emergency financial aid grants. The formula provided by Congress for calculating the distribution of funds to institutions excludes students who were exclusively enrolled in distance education courses. Additionally, the emergency financial aid grants to students are for expenses related to the disruption of campus operations due to coronavirus, and students who were enrolled exclusively in online programs would not have expenses related to the disruption of campus operations due to coronavirus. (Institutional Portion FAQs).

22. **Question:** Are incarcerated students participating in the Second Chance Pell Experimental Site Initiative (ESI) eligible for emergency financial aid grants to students?

    **Answer:** The CARES Act expressly requires that institutions provide the emergency financial aid grants to students "for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and childcare)." If an incarcerated individual who is participating in the Second Chance Pell experiment is released from incarceration as a result of the national emergency due to the coronavirus, remains enrolled as a student in the program under the Second Chance Pell experiment, and has such expenses, he or she likely qualifies for an emergency financial aid grant. A person who remains incarcerated is unlikely to incur these expenses and would thus be ineligible. Accordingly, for students participating in the Second Chance Pell ESI, institutions will need to review on a case-by-case basis what, if any, expenses an incarcerated person, or a formerly incarcerated person released due to the coronavirus, has incurred due to the disruption of campus operations. (Student Portion FAQs).

**EXHIBIT 9 - 10**

**23. Question:** Can institutions that have provided refunds to students for room and board, tuition, and other fees (such as activities fees) reimburse themselves from the funds for the emergency financial aid grants to students?

**Answer:** No. The CARES Act requires institutions to use no less than 50 percent of HEERF funds received under Sections 18004(a)(1) and 18004(c) of the CARES Act to provide emergency financial aid grants to students. These funds distributed by the Department represent the 50 percent minimum of each institution's HEERF funds under Section 18004(a)(1) of the CARES Act for these emergency financial aid grants to students. Section 2 of the Funding Certification and Agreement for the Emergency Financial Aid Grants to Students states: "Recipient shall not use [these] funds to reimburse itself for any costs or expenses, including but not limited to any costs associated with significant changes to the delivery of instruction due to the coronavirus and/or any refunds or other benefits that Recipient previously issued to students."

Institutions will have more flexibility in the use of the portion of the HEERF that is made available to cover an institution's costs associated with significant changes to the delivery of instruction due to the coronavirus. The Department will provide a Frequently Asked Questions (FAQ) document regarding the allowable uses of funds for an institution's costs shortly after making those funds available to institutions. (Student Portion FAQs).

**24. Question:** Can institutions that have provided information technology hardware (such as laptops, hotspot internet devices, etc.) and other related equipment to students reimburse themselves from the funds for the emergency financial aid grants to students?

**Answer:** No. The CARES Act requires institutions to provide the emergency financial aid grants to students. Section 2 of the Funding Certification and Agreement for the Emergency Financial Aid Grants to Students states: "Recipient shall not use [these] funds to reimburse itself for any costs or expenses, including but not limited to any costs associated with significant changes to the delivery of instruction due to the coronavirus and/or any refunds or other benefits that Recipient previously issued to students."

Institutions will have more flexibility in the use of the portion of the HEERF that is made available to cover an institution's costs associated with significant changes to the delivery of instruction due to the coronavirus. The Department will provide a FAQ document regarding the allowable uses of funds for an institution's costs shortly after making those funds available to institutions. (Student Portion FAQs).

**25. Question:** Can institutions that have continued to pay student workers from institutional funds for campus jobs reimburse themselves from the funds for the emergency financial aid grants to students?

**Answer:** No. The CARES Act requires institutions to provide the emergency financial aid grants <u>to</u> students, and institutions may not use that portion of the HEERF set aside for emergency financial aid grants to students for this purpose. The Department notes that Congress has provided additional flexibility to institutions relating to the Federal Work-

EXHIBIT 9 - 11

Study (FWS) Program, including that institutions may continue to pay FWS wages to students for the remainder of the current academic year in instances in which those students' jobs were interrupted as a result of the national emergency due to the coronavirus, as long as those students had started employment prior to this national emergency. The CARES Act also waives the non-federal wage match requirement for institutional and non-profit employers of FWS students. Please see the Department's Guidance for Interruptions of Study Related to Coronavirus, which provides additional information about the FWS Program.

The Department will provide a FAQ document regarding the allowable uses of funds for an institution's costs associated with significant changes to the delivery of instruction due to the coronavirus shortly after making those funds available to institutions. (Student Portion FAQs).

26. **Question:** Can institutions use the funds for the emergency financial aid grants to students to pay outstanding or overdue student bills to institutions?

    **Answer:** No. The CARES Act requires institutions to provide the emergency financial aid grants to students. The institution may not use that portion of the HEERF set aside for emergency financial aid grants to students to satisfy a student's outstanding account balance. The Department notes that the student may use his or her emergency financial aid grant for expenses related to the disruption of campus operations due to coronavirus. (Student Portion FAQs).

27. **Question:** Are emergency financial aid grants to students (made available under the HEERF in the CARES Act) available only to students who were enrolled during the semester or quarter in which the national emergency was declared?

    **Answer:** No. Institutions must spend 50 percent of funds received under Section 18004(a)(1) for emergency financial aid grants to students. Section 18004(c) of the CARES Act states that the emergency financial aid grants for students are for "expenses related to the disruption of campus operations due to coronavirus," and students may incur expenses related to the disruption of campus operations due to coronavirus after the semester or quarter in which the national emergency was declared. Although the intent of the CARES Act is to make emergency financial aid grants immediately available to students, if funds remain after making these immediate disbursements, eligible students enrolled during subsequent terms may receive emergency financial aid grants even if they were not enrolled during the spring 2020 term. (Supplemental FAQs).

28. **Question:** If an institution decides to use funds received under the Institutional Relief portion of Section 18004(a)(1) to make additional emergency financial aid grants to students, can the institution make those awards to students during the summer and fall terms?

    **Answer:** Yes. The Certification and Agreement for the Institutional Portion of Section 18004(a)(1) states: "If Recipient chooses to use funds designated for Recipient's

**EXHIBIT 9 - 12**

Institutional Costs to provide such emergency financial aid grants to students, then the funds are subject to the requirements in the Funding Certification and Agreement for the Emergency Financial Aid Grants to Students under the CARES Act, entered into between Recipient and the Secretary." Students may experience expenses related to the disruption campus operations due to coronavirus after the semester or quarter in which the national emergency was declared. (Supplemental FAQs).

## F. Use of Funds – (a)(1) Institutional Portion, (a)(2), and (a)(3) Programs

**29. Question:** May institutions use the funds for Recipient's Institutional Costs to make additional emergency financial aid grants to students?

**Answer:** Yes. Institutions may use the funds for Recipient's Institutional Costs received through the HEERF under Sections 18004(a)(1) and 18004(c) of the CARES Act to make additional emergency financial aid grants to students, provided that such emergency financial aid grants are for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care).

Additionally, as explained in the FAQs about the Emergency Financial Aid Grants to Students under Section 18004 of the CARES Act, students must be eligible to receive emergency financial aid grants, and only students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial aid grants. (Institutional Portion FAQs).[4]

**30. Question:** Can institutions that have provided institutionally-funded emergency grants to students as a result of COVID-19 reimburse themselves from the funds for the emergency financial aid grants to students?

**Answer:** The only institutionally-funded emergency grants to students that are eligible for reimbursement from the funds for emergency financial aid grants to students under the CARES Act are grants: 1) for authorized expenses related to the disruption of campus operations due to coronavirus as set forth in Section 18004(c) of the CARES Act; 2) made to students eligible to receive emergency financial aid grants under the CARES Act; and made on or after March 27, 2020, the date the CARES Act was enacted. An institution must use no less than 50 percent of funds provided pursuant to Sections 18004(a)(1) and 18004(c) for emergency financial aid grants to students. An institution must document that reimbursements for institutionally-funded emergency grants to students are made in accordance with the CARES Act. (Student Portion FAQs).

---

[4] This paragraph of this FAQ has been superseded by the June 17, 2020 release of an Interim Final Rule (IFR) (85 FR 36494) regarding student eligibility and subsequent litigation. For more information, please visit the HEERF Litigation Updates website here: https://www2.ed.gov/about/offices/list/ope/heerfupdates.html.

13

EXHIBIT 9 - 13

**31. Question:** May institutions that have provided refunds to students for room and board, tuition, and other fees (such as activities fees) reimburse themselves from the funds for Recipient's Institutional Costs made available through the HEERF?

**Answer:** Yes. Institutions may use the funds for Recipient's Institutional Costs to provide refunds to students for room and board, tuition, and other fees as a result of significant changes to the delivery of instruction, including interruptions in instruction, due to the coronavirus. Institutions also may reimburse themselves for refunds previously made to students on or after March 13, 2020, the date of the President's Proclamation, "Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak," Federal Register Vol. 85, No. 53 at 15337-38 (hereinafter "Proclamation of National Emergency"), if those refunds were necessitated by significant changes to the delivery of instruction, including interruptions in instruction, due to the coronavirus. (Institutional Portion FAQs).

**32. Question:** May institutions use the funds for Recipient's Institutional Costs to purchase laptops, hotspots, or other information technology equipment and software to enable students to participate in distance learning as a result of a significant change to the delivery of instruction due to the coronavirus? May institutions use those funds to reimburse themselves for computers already purchased for and distributed to students?

**Answer:** Yes. Institutions may use the funds for Recipient's Institutional Costs to purchase equipment or software, pay for online licensing fees, or pay for internet service to enable students to transition to distance learning as such costs are associated with a significant change in the delivery of instruction due to the coronavirus. Additionally, institutions that purchased computers or other equipment to donate or provide to students on or after March 13, 2020, the date of the Proclamation of National Emergency, may reimburse themselves for such computers or other equipment from the funds for Recipient's Institutional Costs. (Institutional Portion FAQs).

**33. Question:** Previous Departmental guidance advises that, consistent with sections 18004(a)(1) and 18004(c) of the CARES Act, institutions that have provided refunds to students for room and board, tuition, and other fees (such as activities fees) may reimburse themselves from the HEERF Institutional Portion. Is an institution's student account credit an acceptable form of a "refund" which can be reimbursed from the Institutional Portion of an institution's allocation under section 18004(a)(1) of the CARES Act?

**Answer:** Yes. Section 18004(c) of the CARES Act expressly states that the funds for a recipient's Institutional Portion are to "cover any costs associated with significant changes to the delivery of instruction due to the coronavirus." As such, directly awarding a student a refund for housing expenses or other fees that the student was not able to utilize due to significant changes to the delivery of instruction due to the coronavirus is an allowable use of the Institutional Portion of an institution's allocation under section 18004(a)(1) of the CARES Act.

EXHIBIT 9 - 14

We encourage institutions to act as quickly as possible to provide refunds to students where the Institutional Portion of an institution's section 18004(a)(1) award is used directly or indirectly for credits to a student's account. In the Title IV context, we require institutions to pay credit balances to students within 14 days; we likewise encourage institutions to provide refunds to students here within 14 days of deciding to use their Institutional Portion funds for this purpose.

Also, as noted previously in Question 1 of the HEERF Emergency Financial Aid Grants to Students FAQs, institutions may not reimburse themselves from the funds statutorily earmarked for emergency financial aid grants to students (the recipient's Student Aid Portion) for refunds to students for room and board, tuition, and other fees (such as activities fees). (Round 3 FAQs).

34. **Question:** My institution has students that paid housing fees for April and May 2020 for collegiate housing, but who were not there physically due to COVID-19. Can our institution provide our students an account credit for the rent amount paid and be reimbursed through the HEERF?

**Answer:** If an institution chooses to reimburse students for rent payments they made, in addition to campus housing fees, during a time when the student could not remain in campus housing "due to significant changes to the delivery of instruction due to the coronavirus," then that is a permissible use of funds from the Institutional Portion of its allocation under section 18004(a)(1) of the CARES Act to reimburse itself for this cost. However, in such a case, if the student paid rent directly to an entity other than the institution, then the institution would need to issue the rent credit to the student in the form of a cash payment, or equivalent. However, if the rent payments were made to the institution, then the institution can reimburse the student for those payments by issuing an account credit for the rent amount paid. (Round 3 FAQs).

35. **Question:** Can an institution use funds under Section 18004(a)(2) or Section 18004(a)(3) to provide grants for students during the summer and fall terms?

**Answer:** Yes. Section 18004(a)(2) of the CARES Act states that institutions may use funds "to address needs directly related to coronavirus" and specifically "for grants to students for any component of the student's cost of attendance (as defined under section 472 of the Higher Education Act), including food, housing, course materials, technology, health care, and child care." Students may have needs directly related to the coronavirus after the semester or quarter in which the national emergency was declared. Similarly, Section 18004(a)(3) of the CARES Act states that these funds are for institutions that "have the greatest unmet needs related to coronavirus," as determined by the Secretary, and that institutions may use funds "for grants to students for any component of the student's cost of attendance (as defined under section 472 of the Higher Education Act), including food, housing, course materials, technology, health care, and child care." Accordingly, these grants to students may be made after the semester or quarter in which the national emergency was declared.

EXHIBIT 9 - 15

Although the CARES Act does not require an institution to use at least 50% of funds received under Section 18004(a)(2) or Section 18004(a)(3) for grants to students, the Certification and Agreement for Funds under Section 18004(a)(2) or Section 18004(a)(3), respectively, states: "[T]he Secretary urges Recipient to devote the maximum possible amount of the award to Student Grants, including some or all of the award that a Recipient may use for Recipient's Expenses, especially if Recipient has a significant endowment or other resources at its disposal. The Secretary urges Recipient to take strong measures to ensure that Student Grants are made to the maximum extent possible." (Supplemental FAQs).

**36. Question:** May institutions use the funds for Recipient's Institutional Costs to award scholarships or to provide payment for future academic terms?

**Answer:** It depends. Section 18004(c) of the CARES Act expressly states that the funds for Recipient's Institutional Costs are to cover costs associated with significant changes to the delivery of instruction due to the coronavirus. Institutions may also use the funds for Recipient's Institutional Costs received through the HEERF under Sections 18004(a)(1) and 18004(c) of the CARES Act to make additional emergency financial aid grants to students, provided that such emergency financial aid grants are for expenses related to the disruption of campus operations due to coronavirus (see FAQ #29). As long as awarding scholarships and providing payment for future academic terms are costs associated with significant changes to the delivery of instruction due to the coronavirus or, if provided to students in the form of emergency financial aid, are for expenses related to the disruption of campus operations due to coronavirus, such uses are allowable. (Institutional Portion FAQs).

**37. Question:** Can institutions use the Student Portion of its CARES Act funds under Section 18004(a)(1) for student scholarships?

**Answer:** No. The CARES Act does not allow institutions use the Student Portion of their Section 18004(a)(1) funds for student scholarships. Institutions may use the Student Portion of their Section 18004(a)(1) funds only for direct emergency financial aid grants to students, not scholarships.

However, an institution may use the Institutional Portion of its Section 18004(a)(1) award for student scholarships under limited circumstances. Section 18004(a)(1) requires institutions to use Institutional Relief funds only to cover "costs associated with significant changes to the delivery of instruction due to the coronavirus" pursuant to Section 18004(c).

Therefore, if an institution wishes to use the Institutional Portion of its Section 18004(a)(1) award to fund student scholarships, the scholarships must be geared towards these types of costs. Examples of such allowable scholarships for "costs associated with significant changes to the delivery of instruction due to the coronavirus" include covering the cost of fees to access an online library in lieu of a physical library (if such fees are

**EXHIBIT 9 - 16**

otherwise usually required), providing students with computers and internet access, and subsidizing the added cost of off-campus housing.

Furthermore, it is important that any scholarships funded by the Institutional Portion of a Section 18004(a)(1) award would not count toward the minimum fifty percent of an institution's total allocation that must be spent on emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus. (Supplemental FAQs).

**38. Question:** Can institutions use CARES Act funds under Section 18004(a)(2) or Section 18004(a)(3) to make scholarships to students?

**Answer:** Yes. Section 18004(a)(2) and Section 18004(a)(3) of the CARES Act state that institutions may use funds specifically "for grants to students for any component of the student's cost of attendance (as defined under section 472 of the Higher Education Act), including food, housing, course materials, technology, health care, and child care." (Supplemental FAQs).

**39. Question:** Can schools using CARES Act funds under Section 18004(a)(2) or Section 18004(a)(3) to make scholarships to students advertise those scholarships using such funds?

**Answer:** Yes. The CARES Act does not include the same restriction on pre-enrollment recruitment activities under Section 18004(a)(2) and Section 18004(a)(3) as it does for funds under Section 18004(a)(1). Accordingly, the Certification and Agreement for funds under Section 18004(a)(2) and Section 18004(a)(3), respectively, does not contain such a restriction. The C & A for Section 18004(a)(1) states: "Recipient shall not use funds for payment to contractors for the provision of pre-enrollment recruitment activities, which include marketing and advertising; endowments; or capital outlays associated with facilities related to athletics, sectarian instruction, or religious worship." The C & A for Section 18004(a)(2) or Section 18004(a)(3) does not contain this language. (Supplemental FAQs).

**40. Question:** The Certification and Agreement for the Institutional Portion of the HEERF states that the funds for Recipient's Institutional Costs cannot be used for the provision of pre-enrollment recruitment activities, including marketing and advertising. Some institutions use an Online Program Management (OPM) provider to both provide a distance learning platform or learning management system and to engage in student recruitment. May institutions use the funds for Recipient's Institutional Costs to pay an OPM provider for the added costs of transitioning ground-based students to distance learning instruction due to the coronavirus?

**Answer:** Institutions may use the funds for Recipient's Institutional Costs to pay a per-student fee to a third-party service provider, including an OPM, for each additional student using the distance learning platform, learning management system, online resources, or other support services; however, institutions may not use funds for

17

EXHIBIT 9 - 17

Recipient's Institutional Costs to pay third-party recruiters or OPMs for recruiting or enrolling new students at the institution. (Institutional Portion FAQs).

41. **Question:** Can schools use CARES Act funds under Section 18004(a)(1) to pay salaries and benefits for employees that work in the dining halls and dorms and who would have otherwise been paid through student housing fees had COVID-19 not disrupted campus operations?

    **Answer:** Yes. Institutions may use Institutional Relief funds under Section 18004(a)(1) of the CARES Act for "costs associated with the significant changes to the delivery of instruction due to the coronavirus." The Certification and Agreement for the Institutional Portion of the HEERF states: "Recipient retains discretion in determining how to allocate and use the funds provided hereunder, provided that funds will be spent only on those costs for which Recipient has a reasoned basis for concluding such costs have a clear nexus to significant changes to the delivery of instruction due to the coronavirus." The Department considers institutions to have such a reasoned basis with respect to the salaries and benefits for employees that work in dining halls and dorms and who would have otherwise been paid through student housing fees, had COVID-19 not disrupted campus operations. (Supplemental FAQs).

42. **Question:** If an institution usually purchases 1,000 laptops for students each year, but during the COVID-19 national emergency needs to purchase 2,000 laptops to accommodate the student body's transition to on-line learning as a result of COVID-19 related disruption can the institution use CARES Act funds to purchase all 2,000 laptops?

    **Answer:** Yes. The CARES Act authorizes institutions to use Institutional Relief Funds (provided under section 18004(a)(1)) or funds made available under 18004(a)(2) or 18004(a)(3) to purchase all 2,000 computers if the institution experienced disruption of instruction as a result of COVID-19.

    Institutions cannot use Section 18004(a)(1) funds designated by the CARES Act as emergency financial aid grants to students (50 percent of Section 18004(a)(1) funds) to purchase laptops or other equipment, even if the institution intends to distribute that equipment to students. (Supplemental FAQs).

43. **Question:** How do recipients of section 18004(a)(2) and (a)(3) funds document lost revenues? Do lost revenues relate only to disruption of instruction? Does lost revenue include revenue lost from cancelled summer camps or unused parking lots?

    **Answer:** Upon request from the Department, institutions must provide documents demonstrating year-over-year decreases in revenue that are the result of a decline in enrollment, a decline in student fees including housing fees and meal plans, a decline in parking and facilities revenue, or a decline in revenue from summer programs or other activities disrupted by COVID-19. (Supplemental FAQs).

EXHIBIT 9 - 18

44. **Question:** Can an institution use the Institutional Portion of its allocation under section 18004(a)(1) to cover losses in revenue?

**Answer:** No. The Institutional Portion of a grantee's 18004(a)(1) award may not be used to simply defray revenue losses. Rather, the institution must use these funds to pay expenses encumbered as a result of "significant changes to the delivery of instruction due to the coronavirus" under 18004(c). However, an institution that received funds under either section 18004(a)(2) or 18004(a)(3) of the CARES Act may use those allocations for the purpose of defraying expenses, including lost revenue.

Institutions must, consistent with the recordkeeping requirements in the Uniform Guidance (2 CFR §§ 200.333-200.337), document any offsets in lost revenue by comparing year-to-year revenue and describing how the shortfall in tuition is impacting the institution's budget. The institution must also track how these funds were spent and report those uses accurately in its required quarterly and annual reports. (Round 3 FAQs).

45. **Question:** Can the Institutional Portion of my institution's allocation under section 18004(a)(1) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act be used to purchase COVID-19-related essentials such as thermometers, cleaning supplies, or other supplies for sanitizing a facility?

**Answer:** Yes. Purchases to ensure the physical safety of students on campus is an allowable use of a grantee's Institutional Portion of its allocation under section 18004(a)(1) of the CARES Act, when these costs are new or added and needed to implement "significant changes to the delivery of instruction due to the coronavirus." This may include the reasonable costs of cleaning supplies, facility cleaning, or the purchase of items to help detect or prevent the spread of COVID-19 (e.g., thermometers, plastic barriers, or face masks). Grantees may also use these funds to make non-permanent changes to existing facilities to ensure social distancing.

As with all grant costs, institutions must maintain adequate documentation as required by 2 CFR § 200.333 and 2 CFR § 200.403(g) to support the reasonableness of these costs, consistent with the cost principles in 2 CFR part 200 subpart E of the Uniform Guidance. (Round 3 FAQs).

46. **Question:** During the COVID-19 crisis while campuses were closed, my institution's instructors taught online and therefore took little to no vacation time off. Upon the re-opening of campuses, my institution will need all its instructors on campus to cover extended campus hours due to added classes to accommodate social distancing guidelines and to make up lost classroom time. As a result, to retain instructors, my institution would like to offer instructors the option to "buy out" an additional week of vacation time, to enable my institution to provide as smooth a transition for students as possible.

My institution's current policy enables instructors to buy out one week of vacation time. The revised policy will save on instructional overtime and the need for additional instructors. Can my institution be reimbursed for the second one-week vacation buyout of instructor vacation?

EXHIBIT 9 - 19

**Answer:** Yes. If due to the "significant changes to the delivery of instruction due to the coronavirus" you anticipate that instructional staff may not have the ability to utilize vacation days or paid time off (PTO) in order to implement such changes to the delivery of instruction to serve their student community, you may utilize the Institutional Portion of your allocation under section 18004(a)(1) of the CARES Act to establish or expand a PTO buyback program for affected employees. (Round 3 FAQs).

47. **Question:** May an institution use the Institutional Portion of its allocation under section 18004(a)(1) of the CARES Act to upgrade its computer systems to facilitate distance learning?

    **Answer:** Yes. An institution may use funds from the Institutional Portion of its section 18004(a)(1) allocation to purchase equipment or software, pay for online licensing fees, or pay for internet service to enable students to transition to distance learning as such costs are associated with a significant change in the delivery of instruction due to the coronavirus. An institution may also use Institutional Portion funds for any other costs for computer system upgrades that are reasonably related to "significant changes to the delivery of instruction due to the coronavirus." This would not include, for example, previously planned upgrades to computer systems. (Round 3 FAQs).

48. **Question:** My institution did not receive a Paycheck Protection Program (PPP) loan when the program first started. There is a three-week period for which salaries for instructors were not covered by the PPP loan my institution later received. May my institution use its allocation under section 18004(a)(1) to be reimbursed for the payment of such instructor salaries?

    **Answer:** It depends. If, for example, the institution decided to reimburse students for some or all of the tuition they had originally paid for instruction during the COVID-19 period, and the three week period was included in the portion of the term for which the student was reimbursed, but the institution continued to provide instruction during that period, then the institution would be permitted to use part of the institution's allocation under section 18004(a)(1) of the CARES Act to reimburse itself for those salary expenses. In addition, if the institution had to hire additional instructors during this period to accommodate the increased demands of online instruction, to reduce class sizes to enable social distancing, or to help instructors adjust to online teaching, then the institution can reimburse itself for those added salary costs using part of its institutional share under section 18004(a)(1) of the CARES Act.

    However, if there were no changes in the number of faculty who taught during those three weeks due to COVID-19, and the institution did not refund students for tuition payments made during that three week period, then the institution would not be permitted to use part of its institutional portion of the funds provided under 18004(a)(1) of the CARES Act.

    The institution could, however, use formula funds received under sections 18004(a)(2) or 18004(a)(3), if applicable, to reimburse itself for salaries paid during that three week

**EXHIBIT 9 - 20**

period, even if there were not changes in the number of instructors paid during that period. (Round 3 FAQs).

49. **Question:** At my institution, administrators' roles are quite varied and includes some high-level officer roles, such as our Chief Fiscal Officer. These administrators, however, do not earn "highest" executives' salaries. If administrators performed numerous COVID-19 related tasks in developing and implementing changes to the delivery of instruction due to the coronavirus, may they be compensated from the institution's allocations under Sections 18004(a)(1), (2) and (3) of the CARES Act?

**Answer:** It depends on the source of the expenditure. Institutions may use the Institutional Portion of their section 18004(a)(1) allocation under the CARES Act for "any costs associated with the significant changes to the delivery of instruction due to the coronavirus." However, as stated in the Certificate and Agreement for the Institutional Portion of the Section 18004(a)(1) allocation:

> The Department would not consider the following Recipient's Institutional Portion to be related to significant changes to the delivery of instruction due to the coronavirus, and therefore would not view them as allowable expenditures: senior administrator and/or executive salaries, benefits, bonuses, contracts, incentives; stock buybacks, shareholder dividends, capital distributions, and stock options; and any other cash or other benefit for a senior administrator or executive.

Such executive and senior administrators' salaries would normally have been paid regardless of the coronavirus and do not meet the standard for costs associated with significant changes to the delivery of instruction due to the coronavirus. Further, the Student Aid Portion of institutions' section 18004(a)(1) allocation is for emergency financial aid grants to students and cannot be used for such expenses. The same prohibition described above is found in the Certification and Agreement for (a)(2) and (a)(3) funds as well.[5]

50. **Question:** Our institution would like to hire an individual that would be solely dedicated for COVID-19-related work. Would this be an allowable cost?[6]

**Answer:** Yes. An institution may use HEERF funds to hire additional personnel when those personnel costs are new or added to respond to "significant changes to the delivery of instruction due to the coronavirus." If an employee's duties are only partially to address or respond to "significant changes to the delivery of instruction due to the coronavirus," the institution may use HEERF funds for only the pro-rated share of hours or effort that employee spends to respond to coronavirus.

---

[5] This FAQ has been updated on November 20, 2020 to clarify that the prohibition on expending HEERF grant funds on senior administrator and/or executive salaries, benefits, etc. is also found in the Certification and Agreement for (a)(2) and (a)(3) funds as well.

[6] For Section 18004(a)(1) Institutional Portion funds.

**EXHIBIT 9 - 21**

Note that as provided in the Recipient's Funding Certification and Agreement for the Institutional Portion of section 18004(a)(1) CARES Act, the Department would not consider senior administrator and/or executive personnel costs to meet this standard. (Round 3 FAQs).

## G. Data Collection

**51. Question:** What data will the Department require institutions to report after disbursement of emergency financial aid grants to students?

**Answer:** As explained in the Funding Certification and Agreement for the Emergency Financial Aid Grants to Students, each institution will report to the Secretary the following: how grants were distributed to students, how the amount of each grant was calculated, and any instructions or directions that the institution gave to students about the grant. Institutions must also comply with the reporting requirements under Section 15011 of the CARES Act. The Department will publish a notice in the Federal Register to provide instructions to institutions on these reporting requirements. (Student Portion FAQs).[7]

**52. Question:** What data will the Department require institutions to report after disbursement of the Recipient's Institutional Costs?

**Answer:** As explained in the Funding Certification and Agreement for the Institutional Portion of the Higher Education Emergency Relief Fund, the institution should be prepared to report the use of the funds for Recipient's Institutional Costs, demonstrating such use was in accordance with Section 18004(c), accounting for the amount of reimbursements to the Recipient for costs related to refunds made to students for housing, food, or other services that Recipient could no longer provide, and describing any internal controls Recipient has in place to ensure that funds were used for allowable purposes and in accordance with cash management principles. The Department will publish a notice in the Federal Register to provide instructions to institutions on these reporting requirements. The Department encourages institutions to keep detailed records of how they are expending all funds received under the HEERF. (Institutional Portion FAQs).[8]

## H. More Information

**53. Question:** Where can institutions locate additional resources and information related to emergency financial aid grants to students?

---

[7] For updated reporting information, please see our HEERF Reporting and Data Collection webpage here: https://www2.ed.gov/about/offices/list/ope/heerfreporting.html.
[8] For updated reporting information, please see our HEERF Reporting and Data Collection webpage here: https://www2.ed.gov/about/offices/list/ope/heerfreporting.html.

EXHIBIT 9 - 22

**Answer:** All Department CARES Act HEERF grant resources and guidance are located on OPE's webpage here: https://www2.ed.gov/about/offices/list/ope/caresact.html. (Student Portion FAQs; Institutional Portion FAQs).

**EXHIBIT 9 - 23**