Kevin E. O'Malley (006420)
Hannah H. Porter (029842)
Gallagher & Kennedy
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone: 602.530.8000
Facsimile: 602.530.8500
Email: kevin.omalley@gknet.com
Email: hannah.porter@gknet.com

Steven M. Gombos (pending *pro hac vice*)
Virginia State Bar No. 30788
David Obuchowicz (pending *pro hac vice*)
Virginia State Bar No. 82483
Gombos Leyton, PC
11350 Random Hills Road #400
Fairfax, Virginia 22030
Telephone: 703.934.2660
Facsimile: 703.934.9840
Email: sgombos@glpclaw.com
Email: dobuchowicz@glpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University, | No. |
| Plaintiff, | **EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |
| v. | |
| Miguel Cardona, in his Official Capacity as Secretary of the United States Department of Education, and the United States Department of Education, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff, Grand Canyon University ("GCU"), respectfully moves for a temporary restraining order and/or preliminary injunction against the Department of Education ("Department") and Department Secretary

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Miguel Cardona, in his official capacity, ordering the Department to (1) immediately classify GCU as a nonprofit institution of higher education ("IHE") for the purposes of allocating emergency funds under the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSAA"), Public Law 116-260 (2020), and the American Rescue Plan Act of 2021 ("ARPA"), Public Law 117-2, to GCU; and (2) pursuant to its status as a nonprofit IHE under section 314(a) of the CRRSAA and section 2003(1) of the ARPA, disburse such emergency funds to GCU.

In the alternative, GCU requests a temporary restraining order and/or preliminary injunction ordering the Department to preserve GCU's rights to receive all emergency funds to which it is entitled as a nonprofit IHE under the CRRSAA and ARPA until the matters raised in GCU's Complaint are adjudicated.

In the CRRSAA and ARPA Congress directed the Department to allocate emergency relief funds to IHEs in the form of two direct grant programs called the Higher Education Emergency Relief Fund II ("HEERF II") and the Higher Education Emergency Relief Fund III ("HEERF III"), respectively.  Congress allocated substantially more emergency funding to nonprofit and public IHEs, as defined under section 101(a) of the Higher Education Act, than to proprietary IHEs, as defined under section 102(b) of the Higher Education Act.  The Department's controlling regulations unambiguously provide that a direct grant applicant meets the definition of a nonprofit IHE under 101(a) of the Higher Education Act upon "proof that the IRS currently recognizes the applicant as an organization to which contributions are tax deductible under section 501(c)(3) of the

Internal Revenue Code." 34 C.F.R. § 75.51. GCU is recognized by the IRS as a 501(c)(3) organization, but the Department nonetheless refuses to recognize GCU as a nonprofit for purposes of allocating emergency funder under the CRRSAA and ARPA.

Accordingly, Plaintiff seeks entry of an order requiring the Department to: (1) immediately classify GCU as a nonprofit IHE for purposes of allocating emergency funding under the CRRSAA and ARPA, and (2) disburse such emergency funding to GCU pursuant to its status as a nonprofit IHE under the CRRSAA and ARPA.

As set forth more fully in GCU's Memorandum of Law in Support of this Motion, a temporary restraining order and/or preliminary injunction is warranted because (1) GCU and its students will suffer immediate and irreparable harm if the requested relief is not granted because the CRRSAA directed the Department to disburse any remaining HEERF II funds on April 16, 2021, and once those funds are disbursed, GCU will lack any legal remedy to recover funds to which it otherwise would have been entitled; (2) the University is likely to prevail on the merits of its claims because the plain meaning of the Department's controlling regulations do not give the Department any discretion to deny GCU's status as a nonprofit IHE for HEERF II and HEERF III purposes; and (3) the public interest will be served by entry of the temporary restraining order or preliminary injunction because it would merely require the Department to follow its controlling regulation and also because it will provide GCU's students with much-needed emergency grants that will mitigate the devastating effects of the coronavirus pandemic on their educational programs.

**MEMORANDUM OF LAW**

**<u>SUMMARY OF ARGUMENT</u>**

Recognizing the devastating effects of the COVID-19 health pandemic on the education of millions of college students, Congress appropriated billions of dollars in the form of emergency grant programs to be allocated by the Department directly to eligible IHEs.  The Department has held that these emergency grant programs are governed by its grant-eligibility regulations.

Those regulations are clear:  an IHE is a nonprofit organization if it is recognized by the IRS as a 501(c)(3) organization.  The Department knows GCU is recognized by the IRS as a 501(c)(3) organization.  Thus, Grand Canyon University is a nonprofit IHE under the Department's grant-eligibility regulations.  This fact is irrefutable.

But the Department now contends that the grant-eligibility regulations do not apply to GCU. Notwithstanding the unambiguous language of these controlling regulations, the Department inexplicably refuses to recognize GCU as a nonprofit IHE for emergency grant purposes.

The Department may not arbitrarily disregard the plain language of its controlling regulations.  It must apply the law as written, and the law is clear:  GCU is a nonprofit for grant purposes.  The Department's failure to treat it as such is without authority and contrary to the law.

Absent immediate injunctive relief, the Department's unlawful actions will be irreversible, resulting in substantial harm to GCU and its students.  The Department's

4

classification of GCU as a proprietary (rather than nonprofit) IHE for grant purposes will improperly deprive GCU of millions of dollars of emergency funding, which would go directly to GCU's students to help them continue their educational programs with minimal interruption. Once those funds are expended by other IHEs, they are gone forever.  GCU will have no remedy to recover funding that should go to its students for emergency relief at a time when it is needed.  Accordingly, GCU requests this Court enter a temporary restraining order or preliminary injunction to prevent this unjust outcome.

## **BACKGROUND**

1. *Congress appropriates funding for colleges to provide emergency assistance to IHEs in response to the COVID-19 pandemic.*

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), to respond to the impact of the COVID-19 pandemic.  The CARES Act appropriated over $14.2 Billion to the Department to establish the Higher Education Relief Fund ("HEERF I"). *See* CARES Act §§ 18001(b)(3), 18004(a)(1).  Congress earmarked the bulk of the HEERF I funding (90%) to IHEs.  *Id.* § 18004.

Congress later enacted the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSAA"), Pub. L 116-260 (2020).  The CRRSAA appropriated another $21.2 billion to the Higher Education Emergency Relief Fund ("HEERF II").  *See* CRRSAA §§ 311, 314(a).  Again, the majority of these funds was allocated to IHEs.  *Id.* However, departing from the CARES Act, which did not

distinguish based on tax status, Congress earmarked 89% of HEERF II to public and private nonprofit IHEs.  *Id.* § 314(a)(1).  Only 3% of HEERF II was allocated to proprietary IHEs.  *Id.* § 314(a)(4).

Most recently, in early March 2021, Congress passed the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. 117-2, which appropriated an additional $39.5 billion to the Higher Education Emergency Relief Fund ("HEERF III").  ARPA § 2003.  The ARPA directed the Department to distribute 91% of HEERF III funds to nonprofit and public IHEs and only 1% to proprietary IHEs.  *Id.* §§ 2003(1), 2003(4).

Congress established the three HEERF funds to provide IHEs with resources to "prevent, prepare for, and respond to coronavirus."  *See* CARES Act § 18004(a)(1); CRRSAA § 314(a); ARPA § 2003 (incorporating by reference CRRSAA § 314(a)).  The HEERF accomplishes this by using the Department as a conduit to distribute funding in the form of direct grants to IHEs.

There are substantially more HEERF II and HEERF III funds available to nonprofit IMEs than proprietary IHEs.  For example, the ARPA allocated approximately $36 billion for nearly 3,500 public and private nonprofit IHEs and only $395.8 million to about 1,650 proprietary IHEs.  ARPA § 2003; (Compl. Exs. 4 and 5, Allocations for § 314(a)(4) IHEs and § 314(a)(1), respectively).

In addition to allocating substantially less money to proprietary IHEs, the CRRSAA and ARPA are more restrictive as to how for-profits can spend HEERF grants.  Nonprofit IHEs may use up to 50% of their overall HEERF award to defray expenses

associated with the coronavirus, including, but not limited to, reimbursement for student refunds paid, expenditures made to enable distance learning, and expenditures for personal protective equipment and sanitation.  CRRSAA §§ 314(c)(1)-(3).  Nonprofit institutions may even use funds in the "institutional portion" of their HEERF grants to recover revenue lost as a consequence of the pandemic.  *Id.*

In contrast, proprietary institutions do not receive an institutional portion through the HEERF II and HEERF III. Proprietary institutions are only permitted to use HEERF II and HEERF III funds to make emergency financial aid grants to their students. *Id.* § 314(c)(7).  They cannot even recover the administrative costs of processing and distributing the funds to students.  (Compl. Ex. 6 at 5, HEERF II Proprietary Institution Grant Funds for Students Frequently Asked Questions, Published Jan. 14, 2021).[1]

To the extent Congress sought to prevent HEERF funds from improperly benefiting private shareholders or owners of proprietary IHEs, GCU is a nonprofit organization under section 501(c)(3) of the Internal Revenue Code, whether or not recognized as a nonprofit by the Department. (Compl. ¶¶ 9-11).  Therefore, HEERF II and HEERF III funds, by law, will not improperly benefit any individual.

While the funding amounts and permissible uses are different, the CRRSAA and ARPA use the same formula to calculate the respective allocated shares for each proprietary and nonprofit IHE.  CRRSAA §§ 314(a)(1)-(4); ARPA §§ 2003(1)-(4).  That

---

[1] *See* Question 13, explaining that proprietary IHEs may not share indirect or administrative costs related to the (a)(4) awards.

formula looks to each IHE's relative enrollment of online and non-online students, its

relative enrollment of Pell Grant recipients and non-Pell Grant recipients, and its relative

enrollment of full-time and part-time students.  *Id.*  Because the formula is the same for

both nonprofit IHEs and proprietary IHEs, the only difference between the two is the pool

of available money.  Thus, a nonprofit IHE and a proprietary IHE with identical

enrollment characteristics would receive vastly different amounts of emergency funding.

> 2. *HEERF is a direct grant program under controlling Department regulations.*

As the Department agrees, HEERF is a direct grant program.  (Compl. Ex. 8,

March 26, 2021 Letter from the Department to GCU) ("HEERF programs are direct grant

programs, because they do not 'allocat[e] funds among eligible States'"). The

Department's regulations directly address how to establish nonprofit status for direct grant

programs.  In fact, the regulation at issue is titled, "How to prove nonprofit status." 34

C.F.R § 75.51.  And that regulation is clear and unambiguous:  a grant applicant is a

nonprofit institution if it is recognized by the IRS as a 501(c)(3) organization.

Under 34 C.F.R. § 75.51, when a grant applicant must establish that it is a

nonprofit IHE, it may do so by furnishing the Department with "proof that the IRS

currently recognizes the applicant as an organization to which contributions are tax

deductible under section 501(c)(3) of the Internal Revenue Code."   Such proof

conclusively determines the issue.  The Department has no discretion to deny nonprofit

status to a grant applicant who meets this requirement.

3.      *GCU is a 501(c)(3) nonprofit institution of higher education.*

GCU is a private, nonprofit Christian university located in Phoenix, Arizona. (Compl. ¶ 9).  It currently educates over 100,000 students, with approximately 23,000 of those students attending its ground campus. *Id.*  For its first 55 years, GCU operated as an Arizona nonprofit institution.  *Id.* Facing financial pressures in the early 2000s, GCU's Board of Trustees approved GCU's sale to a proprietary company to raise money to keep the University operating.  *Id.* In 2018, after returning to solid financial footing, GCU returned to its nonprofit status to allow GCU and its students, faculty and staff to participate in academic, co-curricular, and athletic opportunities with peer institutions, and provide grant writing and research opportunities for faculty and students.  *Id.*

GCU's primary purpose in returning to its nonprofit status was to ensure faculty and students would receive the same benefits and treatment as other public and private nonprofit universities.  *Id.* ¶ 10.  The disparate treatment of proprietary schools—and more importantly, the students who attend them—during a national health emergency exemplifies the importance of being recognized as a nonprofit.  The impacts of the coronavirus do not discriminate based on an IHE's tax status.  But Congress and the Department do.  GCU is a nonprofit IHE, and its students are entitled to equal treatment as that afforded to students of other nonprofit IHEs.

To accomplish its return back to nonprofit status, GCU's Board of Trustees formed a new entity, Gazelle, which purchased GCU from its prior proprietary owner in July 2018. *Id.* ¶ 11. Before the transaction, Gazelle applied for and received IRS approval as a

9

501(c)(3) tax-exempt nonprofit organization.  *Id.*  And after Gazelle completed the acquisition, the IRS issued a letter reaffirming Gazelle's 501(c)(3) status.  *Id.*  After acquiring the assets of the University, Gazelle changed its name to Grand Canyon University, the Plaintiff in this action.  *Id.*

Following the July 2018 transaction, GCU sought approval to continue participation in Title IV programs pursuant to the Department's change-in-ownership requirements at 34 C.F.R. § 600.30.  (Compl. ¶ 48).  In November 2019, the Department approved GCU's application to continue participating in Title IV programs but refused to recognize GCU's nonprofit status for that purpose.  *Id.*

After GCU spent over a year trying to work with the Department to avoid litigation and providing additional information and independent studies further confirming GCU's compliance with all nonprofit requirements, the Department affirmed its decision in a January 12, 2021 letter.  Id. ¶ 49.  As it pertains to the instant case, though, the Department expressly limited its decision to "purposes of [GCU's] participation in the Title IV, HEA programs" and clarified that "[t]he Department does not take a position with respect to [GCU's] non-profit 501(c)(3) status with the Internal Revenue Service."  Id. ¶ 50.  Thus, the Department's decision, by its own terms, is inapplicable to direct grant programs such as HEERF, which are not Title IV funds.  To be clear, the Department's refusal to recognize GCU as a nonprofit IHE for Title IV purposes is also arbitrary and

capricious and contrary to the law.[2]

    4.    *The Department refuses to recognize GCU's 501(c)(3) status for HEERF purposes.*

Because GCU is an IRS recognized 501(c)(3) organization, it indicated its nonprofit status when it applied for HEERF I funds.  (Compl. ¶ 20; Compl. Ex. 1).  When the Department published its solicitation for HEERF I allocations, it also published allocation tables showing each IHE's HEERF I award amounts.  (Compl. Exs. 2 and 3).  The CARES Act did not differentiate between nonprofit and proprietary IHEs for the HEERF I, so the allocation table does not identify whether each IHE is public/nonprofit or proprietary.  *Id.* But when the Department published the allocation tables for the HEERF II, it classified GCU as a proprietary IHE and allocated HEERF II grants to GCU pursuant to that status. (Compl. ¶ 23; Compl. Ex. 4 at 1).

In a March 17, 2021 letter, GCU advised the Department that controlling regulations require GCU to be designated as a nonprofit IHE and allocated HEERF II and HEERF III funds accordingly.  (Compl. Ex. 7).  GCU's letter explained that because HEERF II and HEERF III are direct grant programs, its status as a nonprofit is mandatory under 34 C.F.R. § 75.51.  *Id.*

The Department's March 26, 2021 letter response concedes that the HEERF is a direct grant program but nonetheless claims without basis that 34 C.F.R. § 75.51 is

---

[2] On February 2, 2021, GCU filed a Complaint in this Court seeking judicial review of the Department's decision. (Civil Action No. 2:21-cv-00177).  The Complaint was served on the Department and other parties required by FRCP Rule 4 in early February 2021.  The Department has not yet filed responsive pleadings.

inapplicable.  Compl. Ex 8.   The Department contends that its direct grant regulations under 34 C.F.R. Part 75, are inconsistent and somehow superseded by the CRRSAA and ARPA.  *Id.* at 3.

But neither CRRSAA nor ARPA contain any language conflicting with or superseding 34 C.F.R. Part 75.  In support of its claim to the contrary, the Department notes that the HEA's definitions of nonprofit IHE and proprietary IHE are incorporated by reference in CRRSAA and ARPA.  *Id.* at 3.   But this creates no conflict with 34 C.F.R. Part 75, which interprets the same HEA definitions.  Congress simply created and funded a new direct grant program for nonprofit, public, and proprietary schools. There is simply no language indicating Congress intended to supersede eligibility requirements for grant programs.

For the purposes of federal student aid programs under HEA's Title IV ("Title IV Programs"), the Department has asserted that GCU does not meet the definition of a nonprofit.  (Compl. ¶ 48).  GCU has also contested that determination, which is based on different regulations interpreting the HEA's definition of nonprofit in the context of Title IV Programs.  *See* Pg. 7, above.  The Department now contends its Title IV eligibility requirements at 34 C.F.R. part 600 govern eligibility for HEERF purposes.  (Compl. Ex. 8 at 3).

The Department is wrong because part 600 only applies to eligibility for purposes of student assistance programs authorized by the HEA. *See* 34 C.F.R. § 600.1.  That part establishes **additional** eligibility requirements an IHE must meet to participate in Title IV

programs.  However, it simply does not apply to direct grant eligibility.  Indeed, the Department concedes that HEERF is a direct grant program, authorized by the CARES Act, CRRSAA, and ARPA.  *See* Compl. Ex. 8 at 3.  It is not a Title IV student assistance program authorized by the HEA.

As discussed more fully below, the Department's interpretation of the plain text of the CARES Act, CRRSAA, and ARPA is wrong.  By incorrectly classifying GCU as a proprietary institution for HEERF purposes, the Department acted contrary to its own regulations and exceeded its authority to administer direct grant programs, depriving GCU and its students millions of dollars in emergency funding.

## STANDARD FOR ISSUING AN INJUNCTION

A preliminary injunction is appropriate when a party establishes that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in the party's favor, and an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). A preliminary injunction is "often dependent as much on the equities of [the] case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction," so long as the other preliminary injunction factors are met.  *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

## ARGUMENT

**I.      GCU is Likely to Succeed on the Merits.**

      a.   GCU is a nonprofit for HEERF purposes.

      Under the Department's regulations for direct grant programs, an applicant for a grant program—such as HEERF—is a nonprofit if it is an IRS recognized 501(c)(3) organization. 34 C.F.R. § 75.51.  The regulations are clear and leave no room for interpretation and cannot be disregarded by the Department for any reason.  "[T]he plain meaning of a regulation governs." *Safe Air for Everyone v. United States EPA*, 488 F.3d 1088, 1097 (9th Cir. 2007) (quoting *Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.*, 307 F.3d 1214, 1219 (9th Cir. 2002).  This Court should not give any deference to the Department's interpretation of its regulations when, as here, they have a clear and plain meaning.  *See Wards Cove, 307 F.3d at 1219* (citing *Christensen v. Harris County*, 529 U.S. 576, 588, (2000)); *see also Roberto v. Dep't of the Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) ("If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning").

      The Department has acknowledged in official public guidance that HEERF funds must be administered under the Department's direct grant program regulations at 34 C.F.R. part 75.  *See* 86 FR 4029, 4030 (Department's Notice of Availability of HEERF grant funding under 314(a)(1)) (Listing 34 CFR part 75 as one of the "Applicable Regulations" for the grant).

      This follows from the relevant statutory language.  Congress directed HEERF II

and HEERF III funds be available to nonprofit and public IHEs as defined in section 101(a) of the Higher Education Act. *See* CRRSAA at § 314(a).  The plain text is clear and unqualified—IHEs that meet the definition in HEA, 101(a) are eligible nonprofit IHEs for HEERF purposes. The Department is granted no authority to deviate from its long-standing direct grant eligibility requirements.

An IHE under section 101(a), is defined as "an educational institution in any State that [among other things] is a public or other nonprofit institution." 20 U.S.C. § 1001(a)(4). The HEA defines nonprofit in section 103(13) to be an IHE that is "owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual." 20 U.S.C. § 1003(13).

For grant purposes the Education Department General Administrative Regulations ("EDGAR") explain how an IHE can demonstrate nonprofit status. *See* EDGAR at 34 C.F.R. parts 75, 77, 79, 81, 82, 84, 86, 97, 98, and 99; 34 C.F.R. 77.1(b) ("Definitions that apply to all Department Programs").  The Department cannot credibly argue these regulations do not govern HEERF eligibility.  In fact, in its invitation to apply for HEERF grants, the Department expressly identified EDGAR as the applicable regulations for these programs. 86 FR 4029, 4030 (identifying EDGAR as "appliable regulations").

The definition of "nonprofit" in EDGAR is identical to section 103(13) of the HEA. 34 C.F.R. 77.1(c). This language tracks the IRS's definition of a 501(c)(3) tax-exempt nonprofit organization.

Under EDGAR an IHE proves that it meets the definition in § 77.1(c) by showing that it is recognized by the IRS as a 501(c)(3) tax-exempt nonprofit. *See* 34 C.F.R. § 75.51 ("How to prove nonprofit status"); *id.* at § 75.51(b) (stating that an applicant may show that it is a nonprofit organization by providing "proof that the Internal Revenue Service currently recognizes the applicant as an organization to which contributions are tax deductible under Section 501(c)(3) of the Internal Revenue Code.").

The Department chose to rely on a 501(c)(3) designation because, an IHE cannot maintain 501(c)(3) status "if its net earnings inure in whole or in part to the benefit of private shareholders or individuals."  26 C.F.R. § 1.501(c)(2).  Thus, by definition, an IHE with 501(c)(3) recognition demonstrates that it meets the nonprofit definition in HEA, section 103(13) and 34 C.F.R. § 77.1(c).  Section 75.51 simply recognizes this fact.

Put simply, by providing evidence of its 501(c)(3) status, an IHE is a nonprofit for grant purposes. The Department has no authority to engage in any further inquiry. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("When the words of a statute are unambiguous, then, this first cannon is also the last: 'judicial inquiry is complete'") (internal citations omitted); *see also Bostock v. Clayton Cty.*, 140 S. Ct. 1731, at *14 (U.S. June 15, 2020) ("This court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end.  The people are entitled to rely on the law as written, without fearing that courts might disregard its plan terms based on some extratextual consideration").

The Department knows that GCU is an IRS approved 501(c)(3). GCU provided the

Department proof of its 501(c)(3) status on multiple occasions, including, most recently, in its March 17, 2021 letter.  (Compl. Ex. 7).  And the Department has itself publicly acknowledged that GCU is an IRS approved 501(c)(3) organization. (Compl. ¶ 50).

Because GCU is an IRS approved 501(c)(3), it meets the CRRSAA and ARPA eligibility requirements for nonprofit IHEs.  The Department's misclassification of GCU as a proprietary institution for HEERF purposes is arbitrary and capricious and contrary to the plain text of its controlling direct grant regulations.

b.  GCU does not meet the definition of proprietary institution.

In its March 27, 2021 letter, the Department asserts that it had decided GCU meets the definition of a proprietary IHE under section 102(b) of the HEA according to their classification of GCU for Title IV Programs. This is plainly wrong.  Under the plain text of section 102(b) it is **impossible** for GCU to be a proprietary IHE for direct grant purposes.

The Department concedes in its letter that "102(b) of the HEA defines a 'proprietary institution of higher education' as one that, *inter alia*, 'does not meet the requirements of paragraph (4) of section 101(a) [i.e., it is not a public or other nonprofit institution].'"  (Compl. Ex. 8 at 3 (citing 20 U.S.C. § 1002(b)(1)(C)).  But as described above, GCU **does** meet the requirements of paragraph 4 of section 101(a) for grant purposes, so it **cannot** be a proprietary IHE under section 102(b).

It is impossible to apply the plain text of HEA, section 102(b) and come to any other conclusion.  By definition, GCU cannot be a proprietary IHE if it is a nonprofit

under section 101(a).  The Department has already defined in 34 C.F.R. §75.51 what

nonprofit means in section 101(a)(4) for purposes of direct grants.  That interpretation

controls.  Applicants for a grant are deemed nonprofit IHEs upon proof of 501(c)(3)

status.

The implausibility of the Department's interpretation is laid bare if CRRSAA, §

314(a)(4) is removed entirely from consideration.  Assume Congress only allocated

HEERF funds for nonprofit and public IHE's under § 314(a)(1).  GCU would clearly meet

definition of a nonprofit IHE in HEA, section 101(a).  As stated above, HEERF is a direct

grant program, and GCU is an IRS recognized 501(c)(3) organization.  It meets the

definition.

Adding CRRSAA, § 314(a)(4) to the picture changes nothing.  As an applicant for

a direct grant, GCU still qualifies as a nonprofit under the HEA, section 101(a).  The

definition of "proprietary IHE" in HEA, section 102(b) says an IHE **cannot** be a

proprietary IHE if it is nonprofit under section 101(a).  20 U.S.C. § 102(b)(1)(C).  The

law, as written, provides for no other interpretation.  *See Bostock v. Clayton Cty.*, 140 S.

Ct. 1731, at *14 (U.S. June 15, 2020).

The Department's illusory reading of the "plain text" of the CRRSAA and ARPA

does not stop with its rewriting of HEA, section 102(b).  In its letter, the Department

asserts that "[n]either the HEA nor its implementing regulations include 501(c)(3)

designation by the IRS as the sole determining factor for nonprofit status under the HEA."

(Compl. Ex. 8 at 3).  But the Department's implementing regulations for direct grants say

**exactly** that.  *See* 34 C.F.R. § 75.51 (listing 501(c)(3) designation by the IRS as a sole

determining factor for nonprofit status under the HEA for grant purposes).

Instead, the Department argues that GCU must meet the requirements of the

Department's implementing regulations defining eligible institutions under 34 CFR part

600.  (Compl. Ex. 8 at 3).  But these regulations only apply to Title IV, HEA student

assistance programs. They do not apply to direct grants. Nowhere in the CARES Act,

CRRSAA, or ARPA does Congress indicate Title IV regulations should apply to the

HEERF direct grant programs.  The Department's view of these statutes is without textual

support.

The Department attempts to manufacture textual support by pointing to Congress's

direction to distribute HEERF funds "using the same systems as the Secretary otherwise

distributes funding to each institution under title IV of the Higher Education Act of 1965."

(Compl. Ex. 8 at 3).   But multiple courts, including one in this circuit, have roundly

rejected that contention, finding that referencing Title IV's distribution systems does not

incorporate Title IV's eligibility requirements. *Oakley v. DeVos*, 2020 U.S. Dist. LEXIS

106092, at \*24-25 (N.D. Cal. June 17, 2020) (The statutory provision cited in the CARES

Act which describes those 'systems' only refers to operational systems used for

administration of funds, not eligibility requirements"); *Noerand v. Devos*, 474 F. Supp. 3d

394, 400 (D. Mass. 2020) ("Nothing in this 'same systems' provision implies the

imposition of an eligibility requirement on the funding so distributed, or implicitly

incorporates Title IV's eligibility requirements, or renders an otherwise plain and clear

statute ambiguous").

To be sure, if Congress had directed the Secretary to distribute HEERF funds by mail, it would be preposterous to argue that the United Postal Code had some bearing an IHE's eligibility for those funds.  That the Department continues to cite the "same systems" provision as a trojan horse to impose Title IV eligibility requirements is telling of the actual textual support for that position.

The Secretary must implement a "[grant] program under the authorizing statute, and to the extent consistent with the authorizing statute, under . . . the regulations in [part 75]."  34 C.F.R. § 75.51(b).  Put simply, part 75 applies unless doing so would be inconsistent with the authorizing statute.  As discussed above, applying the CRRSAA, ARPA, and the Department's direct grant regulations creates no conflict.

On the other hand, the Department's position ignores its applicable direct grant eligibility regulations (*e.g.*, 34 C.F.R. § 75.51, requiring nonprofit recognition for direct grants upon proof of 501(c)(3) recognition) and rewrites its governing statutes (*e.g.*, HEA, 102(b)(1)(C), precluding GCU's classification as a proprietary IHE if it meets the definition of nonprofit at HEA, 101(a)(4)).

Inexplicably, the Department contends it is GCU's position that creates conflict. The only interpretation of the CRRSAA and the APRA that is consistent with the Department's regulations is that GCU is nonprofit for HEERF purposes. *In re Catapult Entertainment Inc.*, 165 F.3d 747, 751 (9th Cir. 1999) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous,

void or insignificant, and so that one section will not destroy another unless the provision

is the result of obvious mistake or error") (quoting 2A Norman J. Singer, Sutherland

Statutory Construction § 46.06 (5th ed. 1992))

## II.   GCU Will Suffer Immediate and Irreparable Harm Absent This Court's Equitable Relief.

Congress created the HEERF to provide emergency relief to IHEs and their

students.  Absent immediate injunctive relieve from this Court, GCU will be denied funds

to which should go to its student to help them address the devastating effects of the

coronavirus.  And, once disbursed to other schools, those funds will not be recoverable.

Absent immediate relief from this Court preserving GCU's rights, there will be no way to

reverse the loss of appropriated funds after they are distributed to other parties.  *See City*

*of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1424 (D.C. Cir. 1994)

("It is a well-settled matter of constitutional law that when an appropriation has lapsed or

has been fully obligated, federal courts cannot order the expenditure of funds that were

covered by that appropriation."); *Ambach v. Bell*, 686 F.2d 974, 986 (D.C. Cir. 1982)

(holding that "interim relief" was proper in a case in which plaintiff States challenged the

agency's formula for distributing educating funding, because, "[o]nce the . . . funds are

distributed to the States and obligated, they cannot be recouped").  Absent a preliminary

injunction, it will be impossible for GCU to recover the HEERF funds to which it is

entitled. *Ambach*, 686 F.3d at 986.

And the time for GCU to claim those funds is imminent.  Congress directed the

Department to allocate HEERF II and HEERF III funds within 30 days of enactment of the CRRSAA and ARPA, respectively.  Section 314(b)(2)(A). The ARPA's date of enactment was March 11, 2021, which means that the Department must act imminently to allocate HEERF III funds. HEERF II funds have already been disbursed to many schools, and the deadline to claim what is left is rapidly approaching.

Further, any HEERF II funds not claimed by the Department's application deadline of April 15, 2021 will be reallocated to those IHEs that had previously applied.[3]  See CRRSAA, at § 314(f) (Directing the Department to reallocate any unclaimed funds 90 days after the invitation for applications). Thus, on April 16, 2021, all remaining HEERF II funds not allocated to nonprofits and public IHEs will be reallocated to other schools. After that date, GCU cannot claim those funds, and the loss to GCU's students would be irreparable.

The Department's mischaracterization of GCU as a proprietary IHE has immense consequences.  HEERF allocations vary substantially depending on an IHEs designation as proprietary versus nonprofit. Under the CRRSAA (HEERF II), only 3% of the available funds are allocated to proprietary institutions, compared with 89% to public and nonprofit institutions.  Under the ARPA (HEERF III), only 1% is allocated to proprietary

---

[3] The Department invited applications for HEERF II allocations on January 15, 2021. *See* 86 FR 4029 (Jan. 1, 2021) (Department's official Notice of availability of applications for grant funding under 314(a)(1) of the CRRSAA).  The Department has identified April 15, 2021 as the cutoff date for HEERF II applications. *See* Department of Education CRRSA Information Page:  https://www2.ed.gov/about/offices/list/ope/crrsaa.html

institutions, compared with 91% to public and nonprofit institutions. Proprietary IHEs receive substantially less in HEERF II and HEERF III grants than similarly situated nonprofit and public IHEs.

By way of comparison, Liberty University, a private nonprofit IHE, received $37.7 million in HEERF II allocations.  Compl. Ex. 5 at 76.  According to the Department's National Center for Education Statistics ("NCES"), Liberty enrolls 47,025 undergraduate students, 72% of whom are enrolled only in distance education. About 19,943 of Liberty's undergraduates receive Pell grants.[4]

For comparison purposes only, GCU has a similar student profile.  GCU's total undergraduate enrollment is 58,997 students, 68% of whom are enrolled only in distance education. About 24,607 of GCU's undergraduate students receive Pell Grants.  GCU, however, received $18 million in HEERF II allocations, about half the amount allocated to Liberty.[5]

While the Department has not yet announced the school-by-school allocations for HEERF III funds, the American Council on Education estimates that the disparity between the two schools will be even more severe:  Liberty is estimated to receive

---

[4] NCES's data regarding Liberty can be found on the NCES College Navigator website here:  https://nces.ed.gov/collegenavigator/?q=liberty&s=all&id=232557
[5] NCES's data regarding GCU can be found on the NCES College Navigator website here: https://nces.ed.gov/collegenavigator/?q=grand+canyon+university&s=all&id=104717

$66,300,000 in allocations, while GCU is only estimated to receive $11,030,000.[6]

GCU enrolls almost 25,000 Pell Grant recipients. Pell Grants are only available to students who display exceptional financial need. *See* 34 CFR § 690.1 ("The Federal Pell Grant Program awards grants to help financially needy students meet the cost of their postsecondary education"). The COVID-19 pandemic has hit low-income families the hardest, and low-income college students in particular have been forced to cancel their educational plans.[7] GCU's ability to mitigate these effects for its students is greatly limited by the Department's unlawful actions.

The loss of HEERF II and HEERF III funds will come almost entirely at the expense of GCU's low-income students. "The Supreme Court and Ninth Circuit have affirmed repeatedly the principle that entities may assert injuries of third parties with whom their interests are 'inextricably bound,' most especially in the case of schools asserting the rights of their students." *Oakley v. DeVos*, 2020 U.S. Dist. LEXIS 106092, at *42 (N.D. Cal. June 17, 2020) (internal citations omitted). GCU has a strong interest in the well-being of its students, and it intends to direct HEERF funds to those students to the greatest extent possible. *See Washington v. Trump*, 847 F. 3d 1151, 1159, 1169 (9th Cir. 2017) (universities suffered irreparable harm, in part, because of injuries stemming

---

[6] ACE's American Rescue Plan simulated HEERF allocations can be found here: https://www.acenet.edu/Policy-Advocacy/Pages/HEA-ED/ARP-Higher-Education-Relief-Fund.aspx

[7] *See Heather Long & Danielle Douglas-Gabriel, The latest crisis: Low-income students are dropping out of college this fall in alarming numbers*, Wash. Post (Sept.16, 2020), https://www.washingtonpost.com/business/2020/09/16/college-enrollment-down/

from a ban on foreign students into the United States).

### III.   The Balance of the Equities and the Public Interest Favors Issuance of the Requested Injunctive Relief.

The balance of the equities and the public interest merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors primary address the impact of the injunction on non-parties. *League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).

For the reasons stated above, the harm to GCU and its students if the injunction is denied is significant and irreparable. The Department will allocate nonprofit portions of HEERF II and HEERF III funds to other schools—funds to which GCU and its students are entitled. GCU's students will be harmed by losing much-needed emergency grants that will enable them to continue their education as intended by Congress. Providing funds to help students continue their education is unquestionably in the public's interest. *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923) ("The American people have always regarded education and acquisition of knowledge as matters of supreme importance which should be diligently promoted"). Indeed, Congress created the HEERF fund for that very purpose.

On the other hand, requiring the Department to follow its own regulations is not against the public interest. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns"). A preliminary

injunction merely requires the Department to allocate funds to GCU as dictated by its own grant eligibility requirements.

Further, to the extent that adding GCU to the nonprofit/public pools for HEERF II and HEERF III funds would lower allocations to other nonprofit and public IHEs, such effects would be *de minimis* when spread across all 3,500 schools.  This minimal difference in funding does not outweigh the millions in funds unlawfully withheld from GCU and its students.

## CONCLUSION

For these reasons, GCU requests the Court issue a temporary restraining order and preliminary injunction ordering the Department to immediately classify GCU as a nonprofit IHE for HEERF purposes and allocate HEERF II and HEERF III funds accordingly.

In the alternative, GCU requests a temporary restraining order and/or preliminary injunction ordering the Department to preserve GCU's rights to receive all emergency funds to which it is entitled as a nonprofit IHE under the CRRSAA and ARPA until the matters raised in GCU's Complaint are adjudicated.

Dated this April 1, 2021.

Respectfully submitted,

/s/ Hannah H. Porter
Kevin E. O'Malley
Hannah H. Porter
GALLAGHER & KENNEDY
2575 E. Camelback Road, Suite 1100
Phoenix, Arizona 85016

1

2                                           /s/ Steven M. Gombos

GOMBOS LEYTON, P.C.

3                                   11350 Random Hills Road, Suite 400

*Lead Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that I transmitted a true and accurate copy of the above-stated Request for

Judicial Notice in Support of its Motion for Temporary Restraining Order and/or

Preliminary Injunction via first class U.S. Mail, postage pre-paid and electronic mail to

the following this, April 1, 2021 to the following:

> James Bickford
> Trial Attorney, Federal Programs Branch
> Civil Division, U.S. Department of Justice
> 1100 L Street, NW
> Washington, DC 20530
> James.Bickford@usdoj.gov
>
> Hannah Hodel
> Office of General Counsel
> 400 Maryland Avenue, SW - Room 6E213
> Washington, D.C. 20202
> Hannah.Hodle@ed.edu

And via first class U.S. Mail *only* to the following:

> Michael Bailey
> United States Attorney for the District of Arizona
> Two Renaissance Square
> 40 N. Central Avenue, Suite 1800
> Phoenix, AZ 85004-4449
>
> Merrick Garland
> Attorney General of the United States
> U.S Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

Miguel Cardona
Secretary of the Department of Education
Office of the Secretary
400 Maryland Avenue S.W.
Washington, DC 20202

United States Department of Education
400 Maryland Avenue S.W.
Washington, DC 20202

*/s/ Andrea L. Parker*
8495620

29

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University,<br><br>                    Plaintiff,<br><br>v.<br><br>Miguel Cardona, in his Official Capacity as Secretary of the United States Department of Education, and the United States Department of Education,<br><br>                    Defendants. | No.<br><br>**PROPOSED TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |

Plaintiff, Grand Canyon University ("GCU") filed an Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction ("Motion for TRO").  In support, GCU filed a Verified Complaint and a Memorandum in Support of its Motion for TRO.  After consideration of GCU's submission and hearing argument from counsel, this Court grants GCU's Motion for TRO for the reasons set forth below.

Rule 65 of the Rules of Civil Procedure requires this Court to specify its reasons for issuing a temporary restraining order.  A grant of injunctive relief is appropriate upon a satisfactory showing as to four factors: (1) that GCU is likely to succeed on the merits of

its case; (2) that the University is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of the equities tips in the University's favor; and (4) that an injunction would not harm the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  However, the balance of the equities and the public interest merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).  GCU has made a satisfactory showing as to each of these elements, and a temporary restraining order is accordingly warranted.

1.     The Court finds that the GCU has satisfactorily shown a likelihood of success on the merits.  The University has sufficiently established for purposes of this Order that Defendants, the Department of Education and Department Secretary, Miguel Cardona, in his official capacity (collectively, "Department") acted arbitrarily and capriciously and contrary to the law by failing to follow its controlling regulations.

GCU alleged facts demonstrating the Department is required to allocate emergency funding to GCU pursuant to sections 314(a)(1) of the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSAA"), Pub. L 116-260 (2020) and section 2003(1) of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. 117-2.  The CRRSAA and ARPA created and funded new direct grant programs: the Higher Education Emergency Relief Fund II ("HEERF II") and the Higher Education Emergency Relief Fund III ("HEERF III"), respectively.  Sections 314(a)(1) the CRRSAA and 2003(1) of the ARPA direct the Department to allocate HEERF II and HEERF III funds to nonprofit and public IHEs as defined in section 101 of the Higher Education Act

("HEA").

For purposes of receiving HEERF II and HEERF III funds, GCU has alleged facts demonstrating that it is a nonprofit IHE under section 101 of the HEA.  The Department's controlling regulations provide that, a direct grant applicant meets the definition of a nonprofit IHE under section 101 of the HEA upon "proof that the IRS currently recognizes the applicant as an organization to which contributions are tax deductible under section 501(c)(3) of the Internal Revenue Code." 34 C.F.R. § 75.51. GCU demonstrated that it is currently recognized by the IRS as a 501(c)(3) organization.

Thus, upon proof of the allegations set forth in its Complaint, GCU is likely to succeed on its claim that the Department acted arbitrarily and capriciously and contrary to the law when it refused to allocate and disburse HEERF II and HEERF III funds to GCU pursuant to section 324(a)(1) of the CRRSAA and section 20003(1) of the ARPA.

2.    The Court further finds that GCU has satisfactorily shown a likelihood of immediate and irreparable harm if the TRO Motion is denied.  Congress allocated HEERF II and HEERF III funds to provide emergency relief to IHEs and their students.  Absent immediate injunctive relief from this Court, GCU will be denied funds which should go to its students to help them address the devastating effects of the coronavirus.  And, once disbursed to other schools, those funds will not be recoverable.  Absent immediate relief from this Court preserving GCU's rights, there will be no way to reverse the loss of appropriated funds after they are distributed to other parties.

Further, any HEERF II funds not claimed by the Department's application deadline

3

of April 15, 2021 will be reallocated to those IHEs that had previously applied.  Thus, on April 16, 2021, all remaining HEERF II funds not allocated to nonprofits and public IHEs will be reallocated to other schools.  After that date, GCU cannot claim those funds, and the loss to GCU and its students would be irreparable.

3.     The Court finds that the balance of equities and public interest favor granting the TRO.  Absent immediate injunctive relief, GCU's students will be harmed by losing much-needed emergency grants that will enable them to continue their education as intended by Congress.  Directing emergency funds to help students continue their education is in the public's interest.

The public interest will not be negatively impacted by an award of a temporary restraining order against the Department.  GCU only asks that the Department follow its own regulations, which the public interest favors.  Further, to the extent that adding GCU to the nonprofit/public pools for HEERF II and HEERF III funds would lower allocations to other nonprofit and public IHEs, such effects would be *de minimis* when spread across all 3,500 schools.  This minimal difference in funding does not outweigh the millions in funds unlawfully withheld from GCU and its students.

4.     Counsel for Plaintiff has reasonably notified the Department and counsel for the Department of the filing of this action, and due to Plaintiff's showing of immediate irreparable harm in the absence of a temporary restraining order, the Court finds the entry of this Order is proper without further notice to the Defendant.

Accordingly, and for the forgoing reasons, it is hereby:

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ORDERED** that the GCU's Motion for a Temporary Restraining Order is **GRANTED**; and it is further

**ORDERED** that the Department classify GCU as a nonprofit IHE for HEERF II and HEERF III purposes; and it is further

**ORDERED** that the Department allocate and disburse HEERF II and HEERF III funds to GCU as a nonprofit IHE pursuant to section 314(a)(1) of the CRRSAA and section 2003(1) of the ARPA; and it is further

**ORDERED** that this Temporary Restraining Order shall remain in effect until such time as a hearing may be held to determine the appropriateness of a preliminary injunction.

DATED  this _____ day of _____, 2021