WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University,<br><br>Plaintiff,<br><br>v.<br><br>Miguel Cardona, et al.,<br><br>Defendants. | No. CV-21-00566-PHX-DLR<br><br>**ORDER** |

Before the Court is Grand Canyon University's ("GCU") emergency motion for a temporary restraining order ("TRO") and/or preliminary injunction ("PI"), which is fully briefed. (Docs. 8, 23, 24, 27.) The Court held a hearing on April 12, 2021 and thereafter took the matter under advisement. (Doc. 28.) For the following reasons, GCU's motion is denied.

**I. Background**

The Higher Education Act ("HEA") classifies institutions of higher education ("IHE") into three categories. The first category encompasses "public or other nonprofit[1]

---

[1] The HEA defines a nonprofit institution as an institution that—

(1)(i) Is owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual;

(ii) Is legally authorized to operate as a nonprofit organization by each State in which it is physically located; and

institution[s]" as defined in § 101 of the HEA; the second includes "proprietary institution[s]" defined in § 102(b);[2] the third covers "postsecondary vocational institution[s]" defined in § 102(c).  20 U.S.C. §§ 1001(a)(4), 1002(b), 1002(c).

In 2018, GCU applied to the Department of Education (the "Department"), seeking to change its status from a § 102(b) proprietary institution to a § 101 nonprofit institution for purposes of its participation in grant programs under Title IV.  The Internal Revenue Service ("IRS") had previously recognized GCU as a 26 U.S.C. § 501(c)(3) organization. (Doc. 1-5.)  The Department denied GCU's application and refused to change GCU's status to that of a § 102(b) IHE.  (Doc. 23-1.)  Without taking a position on GCU's classification as a § 501(c)(3) organization with the IRS, the Department concluded that GCU did not meet the requirement that its operations were "not substantially for the benefit of any other person or entity" so as to qualify as a  § 101 nonprofit institution. (Doc. 23-1 at 15.)  In particular, the Department pointed to a services agreement, which it noted would funnel a substantial portion of GCU's net earnings to the for-profit seller and underscored the significant overlap of the management of the for-profit seller and non-profit buyer.  This decision of the Department is not at issue here, although GCU has challenged it in a separate lawsuit pending before Judge Bolton.[3]

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020) (the "CARES Act"), which, *inter alia*, appropriated over $14.2 billion to the Department to establish the Higher Education Emergency Relief Fund ("HEERF I").  HEERF I's funds were allocated to IHEs "to prevent, prepare for, and respond to coronavirus."  *See* CARES Act § 18004.  The CARES

---

> (iii) Is determined by the U.S. Internal Revenue Service to be an organization to which contributions are tax-deductible in accordance with section 501(c)(3) of the Internal Revenue Code (26 U.S.C. 501(c)(3))

34 C.F.R. § 600.2.

[2] Section 102(b) of the HEA defines a proprietary IHE as one that, *inter alia*, does not meet the requirements of paragraph (4) of section 101(a)—i.e., it is not a public or other nonprofit institution.

[3] *See Grand Canyon Univ. v. Rosenfelt*, No. 2:21-cv-177-SRB.

1   Act did not distinguish between the HEA's three IHE categories in allocating HEERF I
2   funds. GCU applied for and received HEERF I funds.

3         In December 2020, Congress enacted the Coronavirus Response and Relief
4   Supplemental Appropriations Act, 2021, Pub. L. No. 116-260 (2020) ("CRRSAA"), which
5   appropriated $21.2 billion to a second Higher Education Emergency Relief Fund ("HEERF
6   II"). However, departing from the CARES Act's approach, Congress earmarked 89% of
7   HEERF II to § 101 and § 102(c) IHEs and only 3% to § 102(b) IHEs. *See* CRRSAA § 314.
8   In March 2021, Congress passed the American Rescue Plan Act of 2021, Pub. L. 117-2
9   ("ARPA"), which appropriated $39.5 billion to a third Higher Education Emergency Relief
10  Fund ("HEERF III"). ARPA maintained the distinction between §§ 102(b), 101 and 102(c)
11  IHEs, earmarking 91% of HEERF III funds to §§ 101 and 102(c) IHEs and only 1% to §
12  102(b) IHEs. *See* ARPA § 2003. GCU applied for HEERF II and III funding, but the
13  Department's allocation tables noted that GCU would only be allocated funds available to
14  § 102(b) IHEs.

15        GCU disputed its limited access to HEERF II and III funds and ultimately filed this
16  lawsuit on April 1, 2021. (Doc. 1.) Alarmed that the HEERF II and III funds would be
17  quickly disbursed to other schools, potentially leaving GCU unable to recover what it
18  believes it is fully owed in the interim, GCU filed its motion for TRO and/or PI on the
19  same day. In its motion, GCU argues that the Department has misclassified it as a
20  proprietary institution for purposes of allocating HEERF II and III funds. It asks the Court
21  to issue a TRO and/or a PI ordering the Department to immediately reclassify it as a
22  nonprofit IHE for purposes of HEERF II and III allocations, and to allocate those funds to
23  GCU based on this reclassification. GCU's motion is now ripe.

24  **II. Legal Standard**

25        A plaintiff seeking a temporary restraining order and/or preliminary injunction
26  "must establish that he is likely to succeed on the merits, that he is likely to suffer
27  irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
28  favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,*

*Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). These elements may be balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). But the sliding-scale approach does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction. *Id.* at 1135. Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

### III. Discussion

GCU argues that the Department's previous determination that GCU does not qualify as a nonprofit institution under § 101 of the HEA does not control its eligibility for HEERF II and HEERF III funds. First, GCU argues that, because HEERF II and III are emergency grants, the Department's regulation for direct grant programs, 34 C.F.R. § 75, is the relevant regulation for determining eligibility. Section 75 states that an applicant, under some programs, may prove it meets the general definition of a nonprofit solely by submitting proof that it is recognized by the IRS as a § 501(c)(3) organization, a condition that GCU meets. Thus, even though the Department does not recognize GCU as a nonprofit under HEA § 101 in the Title IV context, GCU contends that it nevertheless constitutes a § 101 IHE for emergency grant purposes and therefore qualifies for greater HEERF II and III relief. Section 75, however, is applicable only insofar as it is consistent with the relevant authorizing statute. 34 C.F.R. § 75.1(b). The authorizing statutes for the HEERF II and III funds are CRRSAA and ARPA, respectively. Looking to these two statutes, Congress made the majority of the available HEERF funds available to "each institution of higher education as defined in section 101 or section 102(c)" and a smaller portion available to "institutions of higher education as defined in section 102(b) of the HEA." *See* CRRSAA

§ 314; ARPA § 2003. This language plainly conveys that eligibility is not dependent on an organization's non-profit status under the direct grant programs, generally, but instead on its HEA status, specifically. *See Roberto v. Dep't of the Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) (citation omitted) ("If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning."). The language of § 75, which does not purport to determine a school's HEA status, is inapplicable here, and GCU's § 501(c)(3) status with the IRS therefore is not the sole factor determining its eligibility for HEERF II and III funds.

Second, GCU argues that the Department's prior decision regarding GCU's HEA status is not determinative because the Department did not take a position with respect to GCU's non-profit § 501(c)(3) status with the IRS and because its HEA determination was for purposes of GCU's participation in the Title IV programs specifically. This argument is unpersuasive. It is of no moment that the Department did not take a position with respect to GCU's § 501(c)(3) status with the IRS because, as discussed above, this status is not the sole factor considered in determining eligibility for HEERF II and III funds. Moreover, the Department specifically stated in its denial that GCU "does not satisfy the Department's definition of a nonprofit." (Doc. 23-1 at 16.) Although the Department determined GCU's proprietary HEA status in the context of Title IV benefits, GCU has provided no authority indicating that an institution's HEA status varies across HEA benefits and programs.

**IV. Conclusion**

Based on a plain reading of the authorizing statutes, it is an organization's HEA status that determines eligibility for HEERF II and III funds. The Department has previously classified GCU as a § 102(b) proprietary institution under the HEA. Although GCU is challenging that classification decision in a case pending before another judge in this district, it has not directly challenged it here. The specific argument that GCU has advanced in this case—that it has been misclassified as a § 102(b) IHE for HEERF II and III purposes because eligibility under those programs is determined under § 75, rather than under § 600.2—is unlikely to succeed. As a result, GCU has not demonstrated the

existence of serious questions going to the merits in this matter.  Because GCU has failed to meet its "serious questions" burden, the Court need not turn to the other *Winter* factors, and neither a temporary restraining order nor a preliminary injunction is appropriate.

**IT IS ORDERED** that GCU's motion for TRO and/or PI (Doc. 8) is **DENIED.**

Dated this 13th day of April, 2021.

Douglas L. Rayes
United States District Judge