JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon University, | |
| Plaintiff, | Case No. 2:21-cv-566-DLR |
| v. | **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED** |
| Miguel Cardona, in his official capacity as Secretary of Education, *et al.*, | |
| Defendants. | |

1    For the reasons set forth in the accompanying memorandum of points and

2    authorities, the U.S. Department of Education and its Secretary hereby move the

3    Court to dismiss the complaint in this case under Federal Rule of Civil Procedure

4    12(b)(6), for failure to state a claim on which relief can be granted.  In compliance

5    with Local Civil Rule 12.1(c), undersigned counsel has notified Plaintiff's counsel

6    of the grounds for this motion, but the parties could not agree that the issues

7    presented here would be curable through amendment.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

1   This case concerns two Higher Education Emergency Relief Funds,

2   established by Congress in December 2020 and March 2021.  These funds, known

3   as "HEERF II" and "HEERF III," are available on certain terms "to each institution

4   of higher education as defined in section 101 or section 102(c)" of the Higher

5   Education Act (HEA), and on other (less favorable) terms "to institutions of higher

6   education as defined in section 102(b) of the HEA."[1]  As this Court has explained,

7   "it is an organization's HEA status that determines eligibility for HEERF II and III

8   funds."  TRO Order at 5, ECF No. 29.  The U.S. Department of Education has

9   concluded that Grand Canyon University is a proprietary institution of higher

10   education, as defined in Section 102(b)—that is the school's status under the HEA.

11   Grand Canyon "is challenging that classification decision in a case pending before

12   another judge in this district," but "it has not directly challenged it here."  *Id.*

13   Grand Canyon's complaint here asserts that the school is eligible for funds

14   directed "to each institution of higher education as defined in section 101 or section

15   102(c) of the HEA," despite its classification as a proprietary institution under

16   Section 102(b).  For the reasons set out in the Court's order denying Grand Canyon's

---

[1] Coronavirus Response and Relief Supplemental Appropriations Act, Pub. L. No. 116-260, div. M, tit. III, § 314(a)(1) & (4); American Rescue Plan Act,  Pub. L. No. 117-2, § 2003.

1    motion for extraordinary injunctive relief, these claims fail as a matter of law.  The

2    complaint must therefore be dismissed under Rule 12(b)(6), for failure to state a

3    claim on which relief can be granted.

4                    **BACKGROUND**

**A.     Title IV of the Higher Education Act and Direct Grant Programs**

5          Under Title IV of the Higher Education Act, "Congress provides billions of

6    dollars through loan and grant programs to help students pay tuition for their

7    postsecondary education."  *Ass'n of Private Sector Colleges & Univs. v. Duncan*,

8    681 F.3d 427, 433 (D.C. Cir. 2012).  "To participate in Title IV programs—*i.e.*, to

9    be able to accept federal funds—a postsecondary institution . . . must satisfy several

10    statutory requirements."  *Id.* at 433–34.  As relevant here, each school must meet

11    one of three definitions.  The principal definition, set out in Section 101 of the HEA,

12    describes an "institution of higher education" as, among other things, "a public or

13    other nonprofit institution."   20 U.S.C. § 1001(a)(4).   Section 102(b) defines

14    "proprietary institutions," *see id.* § 1002(b), and Section 102(c) defines

15    "postsecondary vocational institutions," *id.* § 1002(c), both of which are also eligible

16    to participate in Title IV programs (though on slightly different terms).  *See Ass'n of*

17    *Private Sector Colleges & Univs. v. Duncan*, 870 F. Supp. 2d 133, 138–41 (D.D.C.

18    2012) (discussing the evolution of these definitions through amendments to the

19    HEA).

1    The Department of Education also runs many other grant programs, some of

2    which are "state-administered," and some of which are "direct."  The difference is

3    that state-administered programs have "a formula for allocating program funds

4    among eligible States," while direct grant programs do not.  34 C.F.R. §§ 75.1, 76.1.

5    The Department's direct grant programs are numerous and diverse.  They include

6    the Arts in Education National Program, 20 U.S.C. § 7292, the Fund for the

7    Improvement of Postsecondary Education, *id.* § 1138, and the Promise

8    Neighborhoods Program, *id.* § 7273, to name three examples among many.

9    Each direct grant program has its own eligibility criteria.  Certain "national

10   nonprofit organization[s]" can participate in the Arts in Education National Program.

11   *See id.* § 7292(e)(1)(G), (e)(2).  Grants from the Fund for the Improvement of

12   Postsecondary Education are available to "institutions of higher education,

13   combinations of such institutions, and other public and private nonprofit institutions

14   and agencies." *Id.* § 1138(a).  And one part of the Promise Neighborhoods Program

15   is open to "institution[s] of higher education, as defined in [20 U.S.C. §] 1002"

16   (which is Section 102 of the HEA), "Indian tribe[s] or tribal organization[s]," or

17   "one or more nonprofit entities working in formal partnership" with other specified

18   entities.  *Id.* § 7272(1)(A).  Each of these programs incorporates an applicant's

19   "nonprofit" status into its eligibility criteria, but none of the authorizing statutes

20   defines that term—which is commonly the case.

4

1    The Department's regulations for direct grant programs, codified at 34 C.F.R.

2    part 75, govern the implementation of each such program "to the extent consistent

3    with the authorizing statute."   34 C.F.R. § 75.1(b).   Those regulations note that

4    "[u]nder some programs, an applicant must show that it is a nonprofit organization."

5    *Id.* § 75.51(a).  Applicants can generally do so by providing "[p]roof that the Internal

6    Revenue Service currently recognizes the applicant as an organization to which

7    contributions are tax deductible under section 501(c)(3) of the Internal Revenue

8    Code."  *Id.* § 75.51(b)(1).

**B.     The Higher Education Emergency Relief Funds**

9    Each of the pandemic relief statutes has included a "Higher Education

10   Emergency Relief Fund," or "HEERF," for the Department to distribute to

11   institutions of higher education, according to statutory criteria.  The first such fund,

12   "HEERF I," was made available on equal terms to every "institution of higher

13   education," as that term is defined "in title I of the Higher Education Act of 1965

14   (20 U.S.C. 1001 et seq.)," without regard to whether a school was an "institution of

15   higher education" under Section 101, 102(b), or 102(c) of the HEA.  Coronavirus

16   Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136,

17   §§ 18004(a)(1), 18007(2), 134 Stat. 567, 569.

18   The second fund, "HEERF II," had different eligibility criteria.  Eighty-nine

19   percent of HEERF II funding was reserved for "institution[s] of higher education as

5

1  defined in section 101 or section 102(c) of the HEA," while only three percent was

2  available to proprietary "institutions of higher education as defined in section 102(b)

3  of the HEA."  Coronavirus Response and Relief Supplemental Appropriations Act

4  (CRRSAA), Pub. L. No. 116-260, div. M, tit. III, § 314(a)(1) & (4); *see* H.R. 133 at

5  751, 116th Cong. (2020) (enacted).  (The other eight percent of HEERF II funding

6  was set aside for purposes not relevant here.)  The authorized uses of HEERF II

7  funds also varied based on a school's classification under the Higher Education Act.

8  Proprietary institutions "as defined in section 102(b) of the HEA," *id.* § 314(d)(7),

9  could only use HEERF II funds to "provide financial aid grants to students," *id.*

10  § 314(c)(3).  Other schools could use HEERF II funds for that purpose, to "defray

11  expenses associated with coronavirus," *id.* § 314(c)(1), or to "carry out student

12  support activities," *id.* § 314(c)(2).

13       The third fund, "HEERF III," maintained the same distinction between

14  proprietary institutions and other institutions of higher education.  American Rescue

15  Plan Act, Pub. L. No. 117-2, § 2003 (appropriating additional funds, as relevant here,

16  "in accordance with the same terms and conditions of section 314 of the Coronavirus

17  Response and Relief Supplemental Appropriations Act"); *see* H.R. 1319 at 20, 117th

18  Cong. (2021) (enacted).  Ninety-one percent of HEERF III funding was reserved for

19  institutions of higher education as defined in Sections 101 or 102(c) of the Higher

6

1    Education Act, *id.* § 2003(1), while only one percent was available to proprietary

2    institutions as defined in Section 102(b), *id.* § 2003(4).

**C.    Grand Canyon University**

3         Grand Canyon University was owned by a for-profit company from the "early

4    2000s" until 2018.  Compl. ¶ 9.  There is no dispute that, during that period of time,

5    Grand Canyon was properly classified as a proprietary institution of higher

6    education as defined in Section 102(b) of the Higher Education Act.

7         In or about 2018, a new corporation was formed to purchase the university

8    from its for-profit owner.  *Id.* ¶ 11.  This new entity, a tax-exempt charitable

9    organization under Section 501(c)(3) of the Internal Revenue Code, was initially

10   known as "Gazelle" but changed its name after completing the purchase.  *Id.*  The

11   corporation is now known as "Grand Canyon University."  *Id.*  To avoid confusion

12   between this corporation and the school that it purchased—to avoid saying, for

13   example, that "Grand Canyon University bought Grand Canyon University"—we

14   will refer to the university as "Grand Canyon" and call the corporation that bought

15   it the "non-profit buyer."  We will call the corporation that sold the university the

16   "for-profit seller."

17        While the sale was pending, Grand Canyon "sought approval to continue

18   participation in Title IV programs pursuant to the Department's change-in-

19   ownership requirements at 34 C.F.R. § 600.30."  *Id.* ¶ 48.  After reviewing the terms

7

of the sale, the Department of Education approved Grand Canyon for continued participation as a proprietary institution under Section 102(b) of the Higher Education Act, but determined that Grand Canyon did not satisfy the definition of a nonprofit institution of higher education under Section 101. *Id.* ¶¶ 48–49. "[T]he Department concluded that GCU did not meet the requirement that its operations were 'not substantially for the benefit of any other person or entity' so as to qualify as a § 101 nonprofit institution." TRO Opp. at 2. "In particular, the Department pointed to a services agreement, which it noted would funnel a substantial portion of GCU's net earnings to the for-profit seller and underscored the significant overlap of the management of the for-profit seller and non-profit buyer." *Id.*

## D.    Procedural Background

On February 2, 2021, Grand Canyon filed suit in this district, challenging the Department of Education's determination that it was a proprietary institution under Section 102(b) of the Higher Education Act, and not a nonprofit institution of higher education under Section 101. The case was assigned to Judge Bolton. In its complaint, Grand Canyon acknowledged that its classification as a proprietary institution would affect its eligibility for certain HEERF funds. *See* Compl. ¶ 11 n.1, *Grand Canyon Univ. v. Cardona*, No. 2:21-cv-177-SRB (D. Ariz.) (explaining that "the Department's definition of [Grand Canyon] as a proprietary institution was

8

1    applied for the purposes of Coronavirus Response and Relief Supplemental

2    Appropriations Act" in allocating HEERF II funds).

3         On April 1, 2021, Grand Canyon filed this separate lawsuit.  In its complaint,

4    Grand Canyon asserts two claims that rest on the same legal theory: that the

5    university is entitled to HEERF II and HEERF III funds reserved for "each

6    institution of higher education as defined in section 101 or section 102(c)" of the

7    Higher Education Act, notwithstanding its classification as a proprietary institution

8    under Section 102(b).  Grand Canyon claims that the Department's classification of

9    Grand Canyon as a proprietary institution for HEERF purposes exceeded its

10   authority to administer grant programs, was arbitrary and capricious, and contrary

11   to its own regulations, in violation of the Administrative Procedure Act.  Grand

12   Canyon also asserts a claim on the same basis under the Declaratory Judgment Act.

13        When it filed its complaint in this case, Grand Canyon moved for a temporary

14   restraining order.  This Court denied that motion, concluding that Grand Canyon was

15   unlikely to succeed on the merits of its claims.  For those same reasons, Grand

16   Canyon's claims must now be dismissed for failure to allege a cognizable legal

17   theory.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory . . . ." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *accord Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) ("A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory . . . .'" (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990))); *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) ("The court may dismiss a complaint as a matter of law for '. . . lack of a cognizable legal theory . . . .'" (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984))).

## ARGUMENT

"[I]t is an organization's HEA status that determines eligibility for HEERF II and III funds." TRO Order at 5, ECF No. 29. Because Grand Canyon University is not an institution of higher education as defined in Section 101 of the Higher Education Act, it is not eligible for funds dedicated to such institutions. Grand Canyon's claims that it is eligible for those funds despite its classification as a proprietary institution under Section 102(b)—which are the only claims presented

1    in its complaint—fail as a matter of law.  The complaint must therefore be dismissed

2    for lack of a cognizable legal theory.  *See Balistreri*, 901 F.2d at 699.

3         In the second COVID relief bill, Congress made one pool of funds available

4    "to each institution of higher education as defined in section 101 or section 102(c)"

5    of the Higher Education Act, and another pool available to proprietary "institutions

6    of higher education as defined in section 102(b)."  CRRSAA, Pub. L. No. 116-260,

7    div. M, tit. III, § 314(a)(1) & (4); *see* H.R. 133 at 751, 116th Cong. (2020) (enacted).

8    In the third relief bill, Congress appropriated funds (as relevant here) "in accordance

9    with the same terms and conditions of section 314 of the Coronavirus Response and

10   Relief Supplemental Appropriations Act."  American Rescue Plan Act, Pub. L. No.

11   117-2, § 2003; *see* H.R. 1319 at 20, 117th Cong. (2021) (enacted).

12        Grand Canyon University is a proprietary institution under Section 102(b) of

13   the Higher Education Act.  Compl. ¶¶ 48–49.  In the separate proceeding before

14   Judge Bolton, Grand Canyon is arguing that the Department of Education wrongly

15   denied its application to become an institution of higher education as defined in

16   Section 101.  *See Grand Canyon Univ. v. Cardona*, No. 2:21-cv-177-SRB (D. Ariz.

17   filed Feb. 2, 2021).  The school has chosen not to bring these claims in that case, nor

18   to make that argument here.  Instead, Grand Canyon argues here that, even if the

19   Department properly denied its change-in-status application, it is nonetheless a

20   Section 101 school "for HEERF purposes."  Compl. ¶¶ 43, 56, 84, 94.e.  But a school

11

only has one status under the Higher Education Act; it does not have different

statuses for different purposes.

Grand Canyon arrives at its counterintuitive conclusion—that it is a Section 101 school for some purposes and a proprietary institution for others—by misreading the Department's regulations for the administration of direct grant programs. *See* Compl. ¶¶ 64–69. The regulations at 34 C.F.R. part 75 interpret a wide range of statutes, and they only apply "to the extent consistent with the authorizing statute" for each individual program. 34 C.F.R. § 75.1(b); *id.* § 75.50 ("Eligibility to apply for a grant under a program of the Department is governed by the authorizing statute . . . for that program."); *see* TRO Order at 4 ("Section 75 . . . is applicable only insofar as it is consistent with the relevant authorizing statute."). Those regulations include a provision entitled "How to prove nonprofit status," 34 C.F.R. § 75.51, which notes that "[u]nder some programs," but not others, "an applicant must show that it is a nonprofit organization," *id.* § 75.51(a).

For example, the Arts in Education National Program is open to certain "national nonprofit organization[s]," 20 U.S.C. § 7292(e)(1)(G), the Fund for the Improvement of Postsecondary Education accepts applications from "private nonprofit institutions," *id.* § 1138(a), and the Promise Neighborhoods Program makes eligible "one or more nonprofit entities working in formal partnership" with other specified entities, *id.* § 7272(1)(A). Because the authorizing statutes for these

1     programs do not provide otherwise, an applicant can demonstrate its nonprofit status

2     consistent with the Department's general regulations, by providing "[p]roof that the

3     Internal Revenue Service currently recognizes the applicant as an organization to

4     which contributions are tax deductible under section 501(c)(3) of the Internal

5     Revenue Code." 34 C.F.R. § 75.51(b)(1). Such applicants need not be institutions

6     of higher education, or even schools of any kind.

7             Although HEERF II and III are direct grant programs—because they are not

8     state-administered, *see* 34 C.F.R. § 76.1—they do not make eligibility dependent on

9     an organization's "nonprofit status" within the meaning of 34 C.F.R. § 75.51.

10    Instead, the authorizing statutes make one portion of these funds available "to each

11    institution of higher education as defined in section 101 or section 102(c)" of the

12    Higher Education Act, and another portion available to proprietary "institutions of

13    higher education as defined in section 102(b)." CRRSAA, Pub. L. No. 116-260, div.

14    M, tit. III, § 314(a)(1) & (4); *see* American Rescue Plan Act, Pub. L. No. 117-2,

15    § 2003. To demonstrate eligibility for HEERF II or III, therefore, an institution must

16    prove its status under the Higher Education Act—and not its "nonprofit status" more

17    generally. Only "institutions of higher education as defined in . . . the HEA" can

18    draw from the Higher Education Emergency Relief Funds. *See* CRRSAA, Pub. L.

19    No. 116-260, div. M, tit. III, § 314(a)(1) & (4). "This language plainly conveys that

20    eligibility is not dependent on an organization's non-profit status under the direct

13

grant programs, generally, but instead on its HEA status, specifically."  TRO Order at 5.

The Department's regulations at 34 C.F.R. part 75 do not purport to determine a school's status under the Higher Education Act.  And they explicitly defer to each program's authorizing statute—in this case, the recent COVID relief bills.  TRO Order at 4 ("Section 75 . . .  is applicable only insofar as it is consistent with the relevant authorizing statute."); *see* 34 C.F.R. § 75.1(b) (regulations apply "to the extent consistent with the authorizing statute" for the direct grant program); *id.* § 75.50 ("Eligibility to apply for a grant under a program of the Department is governed by the authorizing statute . . . for that program."); *id*. § 75.51 (regulation on "How to prove nonprofit status" only applies to "some programs"); *id*. § 77.1(c) (definitions only apply "[u]nless a statute or regulation provides otherwise").

Grand Canyon University is a proprietary institution under Section 102(b) of the Higher Education Act; it is eligible to participate in HEERF II and III as such. Yet Grand Canyon argues that, because it is owned by a charitable organization under section 501(c)(3) of the tax code, it must be allowed to participate in HEERF II and III as though it were an institution under Section 101 of the Higher Education Act—that, in fact, it *is* such an institution "for HEERF purposes."  Compl. ¶¶ 43, 56, 84, 94.e.  Ultimately, Grand Canyon's eligibility for HEERF II and III is a question of congressional intent.   To the extent that the Department's regulations are

1    inconsistent with the later-enacted statutes (which they are not), it is of course the

2    statutory text that governs. *United States v. Maes*, 546 F.3d 1066, 1068 (9th Cir.

3    2008) ("[A] regulation does not trump an otherwise applicable statute unless the

4    regulation's enabling statute so provides.").

5          Congress made one pool of funds available "to each institution of higher

6    education as defined in section 101 or section 102(c)" of the Higher Education Act,

7    and another pool available to proprietary "institutions of higher education as defined

8    in section 102(b)." CRRSAA, Pub. L. No. 116-260, div. M, tit. III, § 314(a)(1) &

9    (4); *see* American Rescue Plan Act, Pub. L. No. 117-2, § 2003. When defining that

10   first pool, did Congress intend to incorporate each school's current status under the

11   Higher Education Act, as the Department understands it to have meant? Or, as

12   Grand Canyon argues, did Congress mean that the funds designated for "each

13   institution of higher education as defined in section 101 . . . of the HEA" should also

14   be available to proprietary institutions as defined in Section 102(b), so long as those

15   schools were owned by charitable organizations under section 501(c)(3) of the tax

16   code?

17         This Court has already answered those questions: "Based on a plain reading

18   of the authorizing statutes, it is an organization's HEA status that determines

19   eligibility for HEERF II and III funds." TRO Order at 5. Grand Canyon University

20   is a proprietary institution under Section 102(b) of the Higher Education Act, and so

15

1  it is ineligible for funds that Congress directed "to each institution of higher

2  education as defined in section 101 or section 102(c)."  Grand Canyon's complaint

3  fails to state a cognizable legal theory, and must therefore be dismissed.

### CONCLUSION

4    For the reasons set forth above, Grand Canyon's complaint should be

5  dismissed under Rule 12(b)(6), for failure to state a claim on which relief can be

6  granted.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendants*

Date: June 1, 2021